| **Fill in this information to identify the case**: |
|---|
| United States Bankruptcy Court for the: |
| Southern District of Texas |
| (State) |
| Case number *(if known)*: _____  Chapter __11__ |

☐ Check if this is an amended filing

Official Form 201
# Voluntary Petition for Non-Individuals Filing for Bankruptcy   04/20

If more space is needed, attach a separate sheet to this form. On the top of any additional pages, write the debtor's name and the case number (if known). For more information, a separate document, *Instructions for Bankruptcy Forms for Non-Individuals*, is available.

**1. Debtor's Name**    Tailored Brands, Inc.

**2. All other names debtor used in the last 8 years**

Include any assumed names, trade names, and *doing business as* names

**3. Debtor's federal Employer Identification Number** (EIN)    **47-4908760**

**4. Debtor's address**

| Principal place of business | Mailing address, if different from principal place of business |
|---|---|
| **6100 Stevenson Boulevard** | |
| Number    Street | Number    Street |
| | P.O. Box |
| **Fremont, California 94538** | |
| City    State    Zip Code | City    State    Zip Code |
| | **Location of principal assets, if different from principal place of business** |
| **Alameda County** | |
| County | Number    Street |
| | City    State    Zip Code |

**5. Debtor's website** (URL)    https://www.tailoredbrands.com/

**6. Type of debtor**
☒ Corporation (including Limited Liability Company (LLC) and Limited Liability Partnership (LLP))
☐ Partnership (excluding LLP)
☐ Other. Specify: _____

Official Form 201    Voluntary Petition for Non-Individuals Filing for Bankruptcy    page 1

Debtor      Tailored Brands, Inc.  
        <sub>Name</sub>

Case number *(if known)*

**7. Describe debtor's business**

A. *Check One:*

☐ Health Care Business (as defined in 11 U.S.C. § 101(27A))

☐ Single Asset Real Estate (as defined in 11 U.S.C. § 101(51B))

☐ Railroad (as defined in 11 U.S.C. § 101(44))

☐ Stockbroker (as defined in 11 U.S.C. § 101(53A))

☐ Commodity Broker (as defined in 11 U.S.C. § 101(6))

☐ Clearing Bank (as defined in 11 U.S.C. § 781(3))

☒ None of the above

B. *Check all that apply:*

☐ Tax-exempt entity (as described in 26 U.S.C. § 501)

☐ Investment company, including hedge fund or pooled investment vehicle (as defined in 15 U.S.C. § 80a-3)

☐ Investment advisor (as defined in 15 U.S.C. § 80b-2(a)(11))

C. NAICS (North American Industry Classification System) 4-digit code that best describes debtor. See http://www.uscourts.gov/four-digit-national-association-naics-codes .
**4481 (Clothing Stores)**

**8. Under which chapter of the Bankruptcy Code is the debtor filing?**

*Check One:*

☐ Chapter 7

☐ Chapter 9

☒ Chapter 11.  *Check all that apply:*

A debtor who is a "small business debtor" must check the first sub-box.  A debtor as defined in § 1182(1) who elects to proceed under subchapter V of chapter 11 (whether or not the debtor is a "small business debtor") must check the second sub-box.

☐ The debtor is a small business debtor as defined in 11 U.S.C. § 101(51D), and its aggregate noncontingent liquidated debts (excluding debts owed to insiders or affiliates) are less than $2,725,625.  If this sub-box is selected, attach the most recent balance sheet, statement of operations, cash-flow statement, and federal income tax return or if any of these documents do not exist, follow the procedure in 11 U.S.C. § 1116(1)(B).

☐ The debtor is a debtor as defined in 11 U.S.C. § 1182(1).  Its aggregate noncontingent liquidated debts (excluding debts owed to insiders or affiliates) are less than $7,500,000 **and it chooses to proceed under Subchapter V of Chapter 11.**  If this sub-box is selected, attach the most recent balance sheet, statement of operations, cash-flow statement, and federal income tax return or if any of these documents do not exist, follow the procedure in 11 U.S.C. § 1116(1)(B).

☐ A plan is being filed with this petition.

☐ Acceptances of the plan were solicited prepetition from one or more classes of creditors, in accordance with 11 U.S.C. § 1126(b).

☒ The debtor is required to file periodic reports (for example, 10K and 10Q) with the Securities and Exchange Commission according to § 13 or 15(d) of the Securities Exchange Act of 1934.  File the *Attachment to Voluntary Petition for Non-Individuals Filing for Bankruptcy under Chapter 11* (Official Form 201A) with this form**.**

☐ The debtor is a shell company as defined in the Securities Exchange Act of 1934 Rule 12b-2.

☐ Chapter 12

**9. Were prior bankruptcy cases filed by or against the debtor within the last 8 years?**

☒ No  
☐ Yes.

| | District | When | Case number |
|---|---|---|---|
| | | | |
| | District | When | Case number |

Debtor   Tailored Brands, Inc.  
       *Name*  

Case number *(if known)*

---

| 10. | Are any bankruptcy cases pending or being filed by a business partner or an affiliate of the debtor? | ☐ No<br>☒ Yes. | Debtor | **See Rider 1** | Relationship | **Affiliate** |
|---|---|---|---|---|---|---|
| | List all cases. If more than 1, attach a separate list. | | District | **Southern District of Texas** | When | **08/02/2020**<br>MM / DD / YYYY |
| | | | | Case number, if known | | |

**11. Why is the case filed in *this* district?**

*Check all that apply:*

☒ Debtor has had its domicile, principal place of business, or principal assets in this district for 180 days immediately preceding the date of this petition or for a longer part of such 180 days than in any other district.

☐ A bankruptcy case concerning debtor's affiliate, general partner, or partnership is pending in this district.

**12. Does the debtor own or have possession of any real property or personal property that needs immediate attention?**

☒ No.
☐ Yes. Answer below for each property that needs immediate attention. Attach additional sheets if needed.

    **Why does the property need immediate attention?** (*Check all that apply.*)

    ☐ It poses or is alleged to pose a threat of imminent and identifiable hazard to public health or safety.

        What is the hazard?

    ☐ It needs to be physically secured or protected from the weather.

    ☐ It includes perishable goods or assets that could quickly deteriorate or lose value without attention (for example, livestock, seasonal goods, meat, dairy, produce, or securities-related assets or other options).

    ☐ Other

    **Where is the property?** _____
        Number  Street

    _____  _____  _____
    City  State  Zip Code

    **Is the property insured?**
    ☐ No
    ☐ Yes.  Insurance agency _____
        Contact name _____
        Phone _____

---

### Statistical and administrative information

**13. Debtor's estimation of available funds**

*Check one:*

☒ Funds will be available for distribution to unsecured creditors.
☐ After any administrative expenses are paid, no funds will be available for distribution to unsecured creditors.

**14. Estimated number of creditors[1]**

| | | |
|---|---|---|
| ☐ 1-49 | ☐ 1,000-5,000 | ☒ 25,001-50,000 |
| ☐ 50-99 | ☐ 5,001-10,000 | ☐ 50,001-100,000 |
| ☐ 100-199 | ☐ 10,001-25,000 | ☐ More than 100,000 |
| ☐ 200-999 | | |

---

[1] The Debtors' estimated assets, liabilities, and number of creditors noted here are provided on a consolidated basis.

Debtor   Tailored Brands, Inc.                                     Case number *(if known)*
      Name

**15. Estimated assets**
- ☐ $0-$50,000
- ☐ $50,001-$100,000
- ☐ $100,001-$500,000
- ☐ $500,001-$1 million
- ☐ $1,000,001-$10 million
- ☐ $10,000,001-$50 million
- ☐ $50,000,001-$100 million
- ☐ $100,000,001-$500 million
- ☐ $500,000,001-$1 billion
- ☒ $1,000,000,001-$10 billion
- ☐ $10,000,000,001-$50 billion
- ☐ More than $50 billion

**16. Estimated liabilities**
- ☐ $0-$50,000
- ☐ $50,001-$100,000
- ☐ $100,001-$500,000
- ☐ $500,001-$1 million
- ☐ $1,000,001-$10 million
- ☐ $10,000,001-$50 million
- ☐ $50,000,001-$100 million
- ☐ $100,000,001-$500 million
- ☐ $500,000,001-$1 billion
- ☒ $1,000,000,001-$10 billion
- ☐ $10,000,000,001-$50 billion
- ☐ More than $50 billion

### Request for Relief, Declaration, and Signatures

**WARNING --** Bankruptcy fraud is a serious crime. Making a false statement in connection with a bankruptcy case can result in fines up to $500,000 or imprisonment for up to 20 years, or both. 18 U.S.C. §§ 152, 1341, 1519, and 3571.

**17. Declaration and signature of authorized representative of debtor**

The debtor requests relief in accordance with the chapter of title 11, United States Code, specified in this petition.

I have been authorized to file this petition on behalf of the debtor.

I have examined the information in this petition and have a reasonable belief that the information is true and correct.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on   **08/02/2020**
      MM/ DD / YYYY

✘ **/s/ Holly Etlin**                                           **Holly Etlin**
   Signature of authorized representative of debtor     Printed name

Title   **Chief Restructuring Officer**

**18. Signature of attorney**

✘ **/s/ Matthew D. Cavenaugh**                  Date   **08/02/2020**
   Signature of attorney for debtor                              MM/ DD/YYYY

**Matthew D. Cavenaugh**
Printed name

**Jackson Walker L.L.P.**
Firm name

**1401 McKinney Street, Suite 1900**
Number          Street

**Houston**                                              **Texas**   **77010**
City                                                          State     ZIP Code

**(713) 752-4200**                                     **mcavenaugh@jw.com**
Contact phone                                          Email address

**24062656**                                              **Texas**
Bar number                                              State

Official Form 201A (12/15)

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

|  |  |
|---|---|
| In re: | Chapter 11 |
| TAILORED BRANDS, INC., | Case No. 20-_____(___) |
| Debtor. |  |

**Attachment to Voluntary Petition for Non-Individuals Filing for Bankruptcy under Chapter 11**

1. If any of the debtor's securities are registered under Section 12 of the Securities Exchange Act of 1934, the SEC file number is **1-16097**

2. The following financial data is the latest available information and refers to the debtor's condition on **July 4, 2020**

(a) Total assets                                                              $ **2,482,124,043**

(b) Total debts (including debts listed in 2.c., below)    $ **2,839,642,691**

(c) Debt securities held by more than 500 holders       **See comment**

Approximate number of holders:

| | | | Amount | Holders |
|---|---|---|---|---|
| secured ☐ | unsecured ☐ | subordinated ☐ | $ | See comment |
| secured ☐ | unsecured ☐ | subordinated ☐ | $ | See comment |
| secured ☐ | unsecured ☐ | subordinated ☐ | $ | See comment |
| secured ☐ | unsecured ☐ | subordinated ☐ | $ | See comment |
| secured ☐ | unsecured ☐ | subordinated ☐ | $ | See comment |

(d) Number of shares of preferred stock              **N/A**

(e) Number of shares of common stock[1]           **51,236,719**

Comments, if any: **Tailored Brands, Inc. does not and cannot know the precise number of beneficial holders of any of the debt securities it has issued and does not believe that any such securities are held by more than 500 holders.**

3. Brief description of debtor's business:    **Tailored Brands, Inc. is a leading omni-channel specialty retailer of menswear, including suits, formalwear and a broad selection of business casual offerings. Tailored Brands, Inc. operate approximately 1,400 stores through the United States and Canada through their omni-channel network of five retail brands (Men's Wearhouse, Men's Wearhouse and Tux, Jos. A. Bank, K&G, and Moores). As of the Petition Date, Tailored Brands, Inc. and its subsidiaries operate 1,274 stores across the United States and 125 stores in Canada, where customers experience the customer services of approximately 18,000 across the globe. Tailored Brands, Inc. also maintains a substantial online presence.**

4. List the names of any person who directly or indirectly owns, controls, or holds, with power to vote, 5% or more of the voting securities of debtor[2]:  **The Vanguard Group, Inc. (6.679%)**

---

[1]   As of July 4, 2020, there were 51,236,719 common stock shares of the registrant issued and 48,899,867 outstanding shares.

[2]   As of March, 31 2020.

| Official Form 201 | Voluntary Petition for Non-Individuals Filing for Bankruptcy | page 5 |
|---|---|---|

| **Fill in this information to identify the case**: |
| --- |
| United States Bankruptcy Court for the: **Southern District of Texas** (State) |
| Case number *(if known)*: _____ Chapter __11__ |

☐ Check if this is an amended filing

## Rider 1
### Pending Bankruptcy Cases Filed by the Debtor and Affiliates of the Debtor

On the date hereof, each of the entities listed below (collectively, the "Debtors") filed a petition in the United States Bankruptcy Court for the Southern District of Texas for relief under chapter 11 of title 11 of the United States Code. The Debtors have moved for joint administration of these cases under the case number assigned to the chapter 11 case of Tailored Brands, Inc.

| |
| --- |
| Tailored Brands, Inc. |
| JA Apparel Corp. |
| Jos. A. Bank Clothiers, Inc. |
| Joseph Abboud Manufacturing Corp. |
| K&G Men's Company Inc. |
| Moores Retail Group Corp. |
| Moores The Suit People Corp. |
| MWDC Holding Inc. |
| Nashawena Mills Corp. |
| Renwick Technologies, Inc. |
| Tailored Brands Gift Card Co LLC |
| Tailored Brands Purchasing LLC |
| Tailored Brands Worldwide Purchasing Co. |
| Tailored Shared Services, LLC |
| TB UK Holding Limited |
| The Joseph A. Bank Mfg. Co., Inc. |
| The Men's Wearhouse, Inc. |
| TMW Merchants LLC |

# IN THE UNITED STATES BANKRUPTCY COURT
# SOUTHERN DISTRICT OF TEXAS
# HOUSTON DIVISION

| | |
|---|---|
| In re: | ) Chapter 11 |
| | ) |
| TAILORED BRANDS, INC., | ) Case No. 20-[●] ([●]) |
| | ) |
| Debtor. | ) |
| | ) |

## LIST OF EQUITY SECURITY HOLDERS[1]

| Debtor | Equity Holders | Address of Equity Holder | Percentage of Equity Held |
|---|---|---|---|
| Tailored Brands, Inc. | The Vanguard Group, Inc. | 100 Vanguard Boulevard Malvern, Pennsylvania 19355 | 6.679% |

---

[1] This list reflects holders of five percent or more of Tailored Brands, Inc.'s common stock. This list serves as the disclosure required to be made by the debtor pursuant to rule 1007 of the Federal Rules of Bankruptcy Procedure. All equity positions listed are as of the date of commencement of the chapter 11 case. By the *Debtors' Emergency Motion for Entry of an Order (I) Authorizing the Debtors to File a Consolidated List of Creditors and a Consolidated List of the 30 Largest Unsecured Creditors, (II) Waiving the Requirement to File a List of Equity Security Holders, (III) Authorizing the Debtors to Redact Certain Personal Identification Information, (IV) Approving the Form and Manner of Notifying Creditors of the Commencement of the Chapter 11 Cases and Other Information, and (V) Granting Related Relief* filed contemporaneously herewith, the debtor is requesting a waiver of the requirement under rule 1007 to file a list of all of its equity security holders.

IN THE UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| In re: | ) Chapter 11 |
| | ) |
| TAILORED BRANDS, INC., | ) Case No. 20-[●] ([●]) |
| | ) |
| Debtor. | ) |

**CORPORATE OWNERSHIP STATEMENT**

Pursuant to rules 1007(a)(1) and 7007.1 of the Federal Rules of Bankruptcy Procedure, the following are corporations, other than a government unit, that directly or indirectly own 10% or more of any class of the debtor's equity interest:

| Shareholder | Approximate Percentage of Shares Held |
|---|---|
| N/A | N/A |

| **Fill in this information to identify the case:** | | |
|---|---|---|
| Debtor name | Tailored Brands, Inc., *et al.* | |
| United States Bankruptcy Court for the: | Southern District of Texas | |
| Case number *(If known)*: | | (State) |

☐  Check if this is an amended filing

# Official Form 204

## Chapter 11 or Chapter 9 Cases: List of Creditors Who Have the 30 Largest Unsecured Claims and Are Not Insiders

12/15

**A list of creditors holding the 30 largest unsecured claims must be filed in a Chapter 11 or Chapter 9 case. Include claims which the debtor disputes. Do not include claims by any person or entity who is an *insider*, as defined in 11 U.S.C. § 101(31). Also, do not include claims by secured creditors, unless the unsecured claim resulting from inadequate collateral value places the creditor among the holders of the 30 largest unsecured claims.**

| | Name of creditor and complete mailing address, including zip code | Name, telephone number and email address of creditor contact | Nature of claim (for example, trade debts, bank loans, professional services, and government contracts) | Indicate if claim is contingent, unliquidated, or disputed | Amount of claim | | |
|---|---|---|---|---|---|---|---|
| | | | | | Total claim, if partially secured | Deduction for value of collateral or setoff [1] | Unsecured Claim |
| 1 | BANK OF NEW YORK MELLON TRUST COMPANY, N.A. 601 TRAVIS ST, 16TH FLOOR HOUSTON, TX 77002 | CONTACT: LISA MCCANTS PHONE: 713-483-6752 EMAIL: LISA.MCCANTS@BNYMELLON.COM | SENIOR NOTES DUE 2022 | | $179,916,000 | | $179,916,000 |
| 2 | ICON INTERNATIONAL INC LOCKBOX SERVICES 1487 DEPT 1487 350 N ORLEANS STREET STE 800 CHICAGO, IL 60654-1529 | CONTACT: KATHLEEN CHOMIENNE PHONE: 203-388-1442 EMAIL: KCHOMIENNE@ICONINTERNATIONAL.COM | TRADE DEBTS | | $8,214,000 | | $8,214,000 |
| 3 | PEERLESS CLOTHING INC. 200 INDUSTRIAL PARK RD. SAINT ALBANS, VT 05478-1873 | CONTACT: JOHN TIGHE PHONE: 469-500-8839 EMAIL: JOHNT@PEERLESS-CLOTHING.COM | TRADE DEBTS | | $8,115,000 | | $8,115,000 |
| 4 | ADOBE SYSTEMS INC 29322 NETWORK PLACE CHICAGO, IL 60673-1293 | CONTACT: JEFFEREY YOUNG PHONE: 385-345-2280 EMAIL: JYOUNG@ADOBE.COM | TRADE DEBTS | | $7,047,000 | | $7,047,000 |
| 5 | WH BUYER, LLC DBA WHP GLOBAL 333 S GRAND AVENUE 28TH FLOOR LOS ANGELES, CA 90071 | CONTACT: STEPHEN CONWELL PHONE: 646-518-8499 EMAIL: SCONWELL@WHP-GLOBAL.COM | ROYALTIES | | $5,781,000 | | $5,781,000 |
| 6 | ENGIE INSIGHT 1313 NORTH ATLANTIC, SUITE 5000 SPOKANE, WA 99201-2330 | CONTACT: RICHARD COOMBE PHONE: 480-625-5055 EMAIL: RICHARD.COOMBE@ENGIE.COM | TRADE DEBTS | | $4,966,000 | | $4,966,000 |

---

[1] The Debtors reserve the right to assert setoff and other rights with respect to any of the claims listed herein.

| | Name of creditor and complete mailing address, including zip code | Name, telephone number and email address of creditor contact | Nature of claim (for example, trade debts, bank loans, professional services, and government contracts) | Indicate if claim is contingent, unliquidated, or disputed | Amount of claim | | |
|---|---|---|---|---|---|---|---|
| | | | | | If the claim is fully unsecured, fill in only unsecured claim amount. If claim is partially secured, fill in total claim amount and deduction for value of collateral or setoff to calculate unsecured claim. | | |
| | | | | | Total claim, if partially secured | Deduction for value of collateral or setoff [1] | Unsecured Claim |
| 7 | MCKINSEY & COMPANY, INC. 3 WORLD TRADE CENTER 175 GREENWICH STREET NEW YORK, NY 10007 | CONTACT: GENERAL COUNSEL OFFICE PHONE: 212-415-5372 EMAIL: KILLIAN_NOLAN@MCKINSEY.COM | PROFESSIONAL SERVICES | | $3,500,000 | | $3,500,000 |
| 8 | DAVID'S BRIDAL, INC. 1001 WASHINGTON ST. ASF MONTHLY INSTALLMENT CONSHOHOCKEN, PA 19428 | CONTACT: JIM MARCUM PHONE: 603-455-5650 EMAIL: JMARCUM@DBI.COM | ROYALTIES | | $3,490,000 | | $3,490,000 |
| 9 | FLOW FORMAL ALLIANCE, LLC P.O. BOX 842683 BOSTON, MA 02284-2683 | CONTACT: JEFF WEINTRAUB PHONE: 561-504-1846 EMAIL: LJTHEALIEN@AOL.COM | TRADE DEBTS | | $3,203,000 | | $3,203,000 |
| 10 | PRODUCTOS TEXTILES 800 METROS CARRETERA A LA JUTOSA, ZONA LIBRE INHDELVA CHOLOMA CORTEZ,   HND | CONTACT: JACOBO KATTAN PHONE: 50499785004 EMAIL: JACOBO.KATTAN@PROTEXSA.HN | TRADE DEBTS | | $2,786,000 | | $2,786,000 |
| 11 | PHILLIPS VAN HEUSEN CORP P.O. BOX 532513 ATLANTA, GA 30353-2513 | CONTACT: ANN RALKO PHONE: 908-332-4698 EMAIL: ANN.RALKO@PVH.COM | TRADE DEBTS | | $2,668,000 | | $2,668,000 |
| 12 | VETEMENTS PEERLESS CLOTHING 8888 BOUL PIE 1X MONTREAL, QC H1Z 4J5 CAN | CONTACT: JOHN TIGHE PHONE: 469-500-8839 EMAIL: JOHNT@PEERLESS-CLOTHING.COM | TRADE DEBTS | | $2,224,000 | | $2,224,000 |
| 13 | GOOGLE, INC. DEPT 33654 P.O. BOX 39000 SAN FRANCISCO, CA 94139 | CONTACT: RICH JONES PHONE: 650-862-1371 EMAIL: RJONES@GOOGLE.COM | TRADE DEBTS | | $1,841,000 | | $1,841,000 |
| 14 | LAGUNA CLOTHING(MAURITIUS)LTD BOUNDARY ROAD QUATRE BORNES,   MUS | CONTACT: ERIC DORCHIES PHONE: 23054233500 EMAIL: EDORCHIES@AQUARELLE-CLOTHING.COM | TRADE DEBTS | | $1,630,000 | | $1,630,000 |
| 15 | TOP GENUINE, LLC PO BOX 50001 PASADENA, CA 91105 | CONTACT: RAY TOLLES PHONE: 213-479-3000 EMAIL: RAY.TOLLES@GMAIL.COM | TRADE DEBTS | | $1,567,000 | | $1,567,000 |
| 16 | KENNETH COLE PRODUCTION/ROYALTIES/ADVERT 400 PLAZA DRIVE SECAUCUS, NJ 07094 | CONTACT: KENNETH COLE PHONE: 914-806-2323 EMAIL: KENNETH@KENNETHCOLE.COM | ROYALTIES | | $1,464,000 | | $1,464,000 |
| 17 | CASS INFORMATION SYSTEMS INC. P.O. BOX 17617 ST.LOUIS, MO 63178 | CONTACT: DEREK PANO PHONE: 978-323-6567 EMAIL: DAPANO@CASSINFO.COM | TRADE DEBTS | | $1,461,000 | | $1,461,000 |
| 18 | AT&T P.O. BOX 5019 CAROL STREAM, IL 60197-5019 | CONTACT: CHARLES KEETON PHONE: 281-797-1882 EMAIL: CK6861@ATT.COM | UTILITY | | $1,361,000 | | $1,361,000 |

| | Name of creditor and complete mailing address, including zip code | Name, telephone number and email address of creditor contact | Nature of claim (for example, trade debts, bank loans, professional services, and government contracts) | Indicate if claim is contingent, unliquidated, or disputed | Amount of claim | | |
|---|---|---|---|---|---|---|---|
| | | | | | If the claim is fully unsecured, fill in only unsecured claim amount. If claim is partially secured, fill in total claim amount and deduction for value of collateral or setoff to calculate unsecured claim. | | |
| | | | | | Total claim, if partially secured | Deduction for value of collateral or setoff [1] | Unsecured Claim |
| 19 | PT UNGARAN SARI GARMENTS KUNINGAN CITY (AXA TOWER), 41ST FLOOR JL. PROF. DR.SATRIO JAKARTA, 12940 IND | CONTACT: MANISH VIRMANI PHONE: 628111045222 EMAIL: MANISH.VIRMANI@BUSANAGROUP.COM | TRADE DEBTS | | $1,205,000 | | $1,205,000 |
| 20 | JIANGSU SUNSHINE CO. LTD./ FABRIC WIRE XINQIAO TOWN,UIANGYIN CITY JIANGSU PROVINCE 214426, CHN | CONTACT: LIPING PHONE: 760-224-7532 EMAIL: LIPINGHECN@YAHOO.COM | TRADE DEBTS | | $914,000 | | $914,000 |
| 21 | HCL TECHNOLOGIES LTD 806 SIDDHARTH 96 NEHRU PLACE NEW DEHLI, 110-0119 IND | CONTACT: TRACY DECICCO PHONE: 303-570-3801 EMAIL: TRACY.DECICCO@HCL.COM | TRADE DEBTS | | $875,000 | | $875,000 |
| 22 | STAPLES PO BOX 70242 PHILADELPHIA, PA 19176-0242 | PHONE: 877-826-7755 | TRADE DEBTS | | $823,000 | | $823,000 |
| 23 | CT CORPORATION PO BOX 4349 CAROL STREAM, IL 60197-4349 | CONTACT: BONNUS SMITH PHONE: 713-882-8566 EMAIL: BONNIE.SMITH@WOLTERSKLUWER.COM | TRADE DEBTS | | $812,000 | | $812,000 |
| 24 | FABIAN COUTURE GROUP 205C CHUBB AVENUE LYNDHURST, NJ 07071 | CONTACT: ALLAN WEISS PHONE: 201-248-3562 EMAIL: AAJWEISS@AOL.COM | TRADE DEBTS | | $805,000 | | $805,000 |
| 25 | FLORSHEIM SHOE CO. 7734 SOLUTION CENTER CHICAGO, IL 60677-7007 | CONTACT: JOHN FLORSHEIM PHONE: 414-908-1889 EMAIL: JFLORSHEIM@WEYCOGROUP.COM | TRADE DEBTS | | $784,000 | | $784,000 |
| 26 | CAULFEILD APPAREL GROUP LTD 1400 WHITEHORSE RD TORONTO, ON M3J3A7 CAN | CONTACT: MARIO TOMEI PHONE: 416-720-5984 EMAIL: MARIOT@CAULFEILD | TRADE DEBTS | | $782,000 | | $782,000 |
| 27 | TRANSPACIFIC INC. C/O TRANSPACIFIC P.O. BOX 75359 CHICAGO, IL 60675-5359 | CONTACT: NING ZHOA PHONE: 917-886-9518 EMAIL: NING@MORETTISHOE.COM | TRADE DEBTS | | $776,000 | | $776,000 |
| 28 | MM FASHION AND DESIGN INC 9202 CHARLES SMITH AVENUE RANCHO CUCAMONGA, CA 91730 | CONTACT: ANGEL MARTINEZ PHONE: 909-720-8661 EMAIL: ANGEL@MMFASHIONINC.COM | TRADE DEBTS | | $742,000 | | $742,000 |
| 29 | BLDG MANAGEMENT CO., INC. / 7101 417 FIFTH AVENUE, 4TH FLOOR NEW YORK, NY 10016 | CONTACT: SARA FONTANET PHONE: 212-624-4337 EMAIL: SFONTANET@BLDG.COM | RENT | | $703,000 | | $703,000 |
| 30 | SITUS ASSET MANAGEMENT, LLC / #220 C/O BTR HAMPSTEAD, LLC SIGNATURE BANK NEWARK, NJ 07101-8084 | CONTACT: ANGELA BALDWIN PHONE: 410-844-3906 EMAIL: ABALDWIN@BTRCAPITALGROUP.COM | RENT | | $701,000 | | $701,000 |

## **CERTIFICATE**

The undersigned, A. Alexander Rhodes, Executive Vice President—General Counsel and Corporate Secretary of Tailored Brands, Inc., a Texas corporation (the "Company"), hereby certifies as follows:

1. I am the duly qualified and elected Corporate Secretary of the Company and, as such, I am familiar with the facts herein certified and I am duly authorized to certify the same on behalf of the Company.

2. Attached hereto is a true, complete, and correct copy of the resolution of the board of directors of the Company (the "Board"), duly adopted at a properly convened meeting of the Board on August 1, 2020, by the members constituting a majority of the votes of the quorum of the directors there present, in accordance with the bylaws of the Company.

3. Such resolution has not been amended, altered, annulled, rescinded, or revoked and is in full force and effect as of the date hereof. There exists no other subsequent resolution of the Board of the Company relating to the matters set forth in the resolution attached hereto.

IN WITNESS WHEREOF, the undersigned has executed this certificate as of the 2nd day of August, 2020.

TAILORED BRANDS, INC.

*[signature]*

Name: A. Alexander Rhodes
Title: Executive Vice President—General Counsel and Corporate Secretary

# RESOLUTIONS OF
# THE BOARD OF DIRECTORS
# OF
# TAILORED BRANDS, INC.
### August 1, 2020

**1. Restructuring Support Agreement**

     **WHEREAS**, the Board of Directors (the "Board") of Tailored Brands, Inc. (the "Company") has reviewed and considered (i) the presentations by the Company's authorized officers and representatives ("Management") on August 1, 2020, and the recommendation by Management that the Company enter into that certain restructuring support agreement (in such form as authorized and executed by any Authorized Officer (as defined below), with such authorization as evidenced by the execution and delivery by any such Authorized Signatory, the "Restructuring Support Agreement"), (ii) the presentations by the Advisors regarding the liabilities and liquidity of the Company, the strategic alternatives available to the Company, and the impact of the foregoing on the Company's business, (iii) the information and advice previously provided to and reviewed by the Board, and (iv) the related matters reported on at meetings of the Board;

     **WHEREAS**, the Board has had the opportunity to consult with Management and the financial, restructuring, and legal advisors described in Section 4 herein (collectively, the "Advisors") and fully consider each of the strategic alternatives available to the Company;

     **WHEREAS**, Management is continuing to negotiate the Restructuring Support Agreement with the Company's stakeholders, with the terms of such Restructuring Support Agreement to be substantially consistent with the terms set forth in the presentations by Management; and

     **WHEREAS**, the Restructuring Support Agreement provides that it can be terminated if the Board determines, after consulting with counsel, that proceeding with any of the restructuring transactions contemplated by the Restructuring Support Agreement would be inconsistent with applicable law or the Board's fiduciary duties.

     **NOW, THEREFORE, BE IT RESOLVED**, that it is desirable and in the best interests the Company, its stakeholders, its creditors, and other parties in interest, to enter into the Restructuring Support Agreement, and that the Company's performance of its obligations under the Restructuring Support Agreement, and all other exhibits, schedules, attachments, and ancillary documents or agreements related thereto, hereby is, in all respects, authorized and approved;

     **FURTHER RESOLVED**, that Management is hereby authorized and directed to take all actions necessary or advisable to negotiate and finalize the Restructuring Support Agreement and, subject to receiving sufficient consents from the Consenting Term Loan Lenders (as defined in the Restructuring Support Agreement), enter into and perform under the Restructuring Support Agreement, and the restructuring contemplated thereunder; and

**FURTHER RESOLVED**, that the officers of the Company, including but not limited to the President and Chief Executive Officer, any Vice President, the Treasurer, Chief Restructuring Officer, the Secretary or any Assistant Secretary of the Company and any other person designated by the Board (collectively, the "Authorized Officers") shall be, and each of them individually hereby is, authorized for and on behalf of the Company to take all actions (including, without limitation, to negotiate and execute any agreements, documents, certificates, supplemental agreements and instruments) necessary or advisable to finalize the Restructuring Support Agreement and, subject to receiving sufficient consents from the Consenting Term Loan Lenders (as defined in the Restructuring Support Agreement), to enter into the Restructuring Support Agreement, and to perform all the transactions contemplated thereby, that in the judgment of the applicable Authorized Officers, are necessary or appropriate to effectuate and carry out the purposes and intent of the foregoing resolutions (such determination to be conclusively evidenced by the taking of such action or execution thereof).

**2. Chapter 11 Filing**

**WHEREAS,** the Board has considered certain materials presented by Management and the Advisors, including, but not limited to, materials regarding the liabilities and obligations of the Company, its liquidity, strategic alternatives available to it, and the effect of the foregoing on the Company's business, and has had adequate opportunity to consult such persons regarding the materials presented, obtain additional information, and to fully consider each of the strategic alternatives available to the Company; and

**WHEREAS,** the Board has had the opportunity to consult with Management and the Advisors and consider each of the strategic alternatives available to the Company.

**NOW, THEREFORE, BE IT RESOLVED,** that in the judgment of the Board, it is desirable and in the best interests of the Company, its creditors, and other parties in interest, that the Company shall be, and hereby is, authorized to file, or cause to be filed, a voluntary petition for relief (such voluntary petition, and the voluntary petitions to be filed by the Company's affiliates, collectively, the "Chapter 11 Cases") under the provisions of chapter 11 of title 11 of the United States Code (the "Bankruptcy Code") in the United States Bankruptcy Court for the Southern District of Texas (the "Bankruptcy Court") and any other petition for relief or recognition or other order that may be desirable under applicable law; and

**FURTHER RESOLVED,** that the Authorized Officers, acting alone or with one or more other Authorized Officers of the Company be, and each of them hereby is authorized, empowered, and directed to execute and file on behalf of the Company all petitions, schedules, lists, and other motions, objections, replies, applications, papers, or documents as necessary or advisable to commence the Chapter 11 Cases and obtain chapter 11 relief, and to take any and all actions that they deem necessary or proper to obtain such relief, including, without limitation, any action necessary to maintain the ordinary course operation of the Company's business.

**3. Senior Secured Super-Priority Debtor-In-Possession Credit Agreement**

**WHEREAS**, the Company, THE MEN'S WEARHOUSE, INC., a Texas corporation, as debtor and debtor-in-possession, each of the other U.S. Subsidiary Borrowers from time to time party thereto (each

3

of the foregoing, individually, as a "U.S. Borrower" and, collectively, as the "U.S. Borrowers"), MOORES THE SUIT PEOPLE CORP., a Nova Scotia unlimited liability company (the "Canadian Borrower" and, together with the U.S. Borrowers, the "Borrowers"), the Canadian Guarantors from time to time party thereto, the Lenders from time to time party thereto, JPMORGAN CHASE BANK, N.A., as Administrative Agent ("U.S. Agent"), and JPMORGAN CHASE BANK, N.A. TORONTO BRANCH, as Canadian Administrative Agent ("Canadian Agent"; together with the U.S. Agent, the "Agents"), propose to enter into that certain SENIOR SECURED SUPER-PRIORITY DEBTOR-IN-POSSESSION CREDIT AGREEMENT dated as of the date hereof (as amended, restated, amended and restated, supplemented or otherwise modified from time to time, the "DIP Credit Agreement");

**WHEREAS**, the obligation of the Lenders to make Loans to the Borrowers under the DIP Credit Agreement is subject to the Company having satisfied certain conditions described in the DIP Credit Agreement and the other Loan Documents (as defined below) to which it is a party;

**WHEREAS**, the DIP Credit Agreement requires the Company to guaranty and to grant a security interest to secure the obligations under the Loan Documents; and

**WHEREAS**, the Company will obtain benefits from the Loans made to the Borrowers under the DIP Credit Agreement.

**NOW, THEREFORE, BE IT RESOLVED**, that the form, terms and provisions of each of the instruments and documents listed below (collectively, the "Loan Documents"), substantially in the form received by the undersigned and the Company's execution, delivery and performance of its obligations under the Loan Documents, including without limitation the grant of security interests under the Loan Documents, and, any borrowings or guaranty therewith, be, and hereby are, in all respects, approved:

a) any promissory note executed by the Companies in connection with the DIP Credit Agreement;

b) any fee letter in connection with the DIP Credit Agreement;

c) any Collateral Document in connection with the DIP Credit Agreement;

d) any intellectual property security agreement in connection with the DIP Credit Agreement;

e) the Interim Order;

f) the Final Order;

g) the Intercreditor Agreement;

h) the Intercompany Subordination Agreement;

i) the Intercreditor Acknowledgement;

j) any commitment letter in connection with the DIP Credit Agreement;

k) any guarantee in connection with the DIP Credit Agreement;

l) any assignment documents, security agreements, notices, financing statements, tax affidavits, and other instruments as the Agents and/or the Lenders may reasonably request or as may be necessary or appropriate to create, preserve and perfect the Liens of Agents and/or the Lenders

required pursuant to the Loan Documents to be created in the Collateral;

m) agreements with third parties (including, without limitation, bank agency agreements, lockbox agreements, cash management agreements, hedge agreements, control agreements, landlord agreements, Collateral Access Agreements, bailee letters, and warehouse letters) relating to the Collateral; and

n) such other Loan Documents (as defined in the DIP Credit Agreement), agreements, documents, Orders, pledges, powers of attorney, instruments, letters of credit, acknowledgements, statements, paper, certificates and other documents and instruments, including any interest rate swaps, caps, collars or similar hedging agreement and any financing statements (or amendments thereto) that may be contemplated by, or as may be required by or executed in connection with any of the Loan Documents.

**FURTHER RESOLVED**, that the Authorized Officers, acting alone or with one or more other Authorized Officers be, and hereby is, authorized and empowered to execute and deliver, and perform all of the obligations and the transactions contemplated under each of the Loan Documents in the name and on behalf of the Company, with such changes therein as shall be approved by the Authorized Officer executing the same, with such execution by said Authorized Officer to constitute conclusive evidence of his or her approval of the terms thereof, including any departures therein from the form presented to the Board;

**FURTHER RESOLVED**, that any person dealing with an Authorized Officer may conclusively rely upon the authority of such Authorized Officer by the execution of a document or agreement;

**FURTHER RESOLVED**, that the Company will obtain benefits from the loans made to the Company under the DIP Credit Agreement and the other Loan Documents which are necessary and convenient to the conduct, promotion and attainment of the business of the Company;

**FURTHER RESOLVED**, that the incurrence by the Company of the borrowings and obligations under the Loan Documents is hereby authorized and approved in all respects and the transactions contemplated by the Loan Documents are approved in all respects;

**FURTHER RESOLVED**, that each of the Authorized Officers be, and hereby is, authorized and empowered to take all actions or to not take any action in the name of the Company with respect to the transactions contemplated by these resolutions as the sole shareholder or sole member, of each direct or indirect subsidiary of the Company, if any, whether existing now or in the future, in each case, as such Authorized Officer shall deem necessary or desirable in such Authorized Officer's reasonable business judgment, including without limitation the authorization of resolutions and agreements necessary to authorize the execution, delivery and performance pursuant to the DIP Credit Agreement or any of the Loan Documents (including certificates, affidavits, financing statements, notices, reaffirmations and amendments and restatements thereof or relating thereto) as may be necessary or convenient to effectuate the purposes of the transactions contemplated herein;

**FURTHER RESOLVED**, that the Company be and it hereby is, authorized and directed to grant the Liens and security interests with respect to all or substantially all of its assets contemplated and as and when required by the Collateral Documents and the other Loan Documents in favor of the Agents and/or the Lenders to secure the Obligations (and any renewals, increases, extension for any period of rearrangement thereof) and to provide the guarantees contemplated in the Loan Documents;

**FURTHER RESOLVED**, that the Agents are authorized to file or record financing statements and other filing or recording documents or instruments with respect to the Collateral without the signature of

5

the Company in such form and substance and in such offices as the Agents determine appropriate to continue to perfect the security interests of the Agents for the benefit of the Lenders under the DIP Credit Agreement and the other Loan Documents, as appropriate, and the Agents are authorized to use the collateral description "all or substantially all personal property assets of the Debtor, whether now existing or hereafter arising" or any similar description in any such financing statements;

**FURTHER RESOLVED**, that the Company be, and hereby is, authorized to guaranty the payment in full and performance of all Obligations, to the extent applicable, of its direct or indirect subsidiaries;

**FURTHER RESOLVED**, that any specific resolutions that may be required to have been adopted by the Company in connection with the actions contemplated by the foregoing resolutions be, and they hereby are, adopted, and the Authorized Officers of the Company be, and each of them acting alone hereby is authorized to certify as to the adoption of any and all such resolutions and attach such resolutions hereto;

**FURTHER RESOLVED**, that the omission from these resolutions of any agreement, document or other arrangement contemplated by any of the agreements, documents or instruments described in the foregoing resolutions or any action to be taken in accordance with any requirement of any of the agreements, documents, or instruments described in the foregoing resolutions shall in no manner derogate from the authority of the Authorized Officers, or any officer of the Company acting at their direction, to take all actions necessary, desirable, advisable or appropriate to consummate, effectuate carry out or further the transactions contemplated by, and the intent and purposes of, the foregoing resolutions;

**FURTHER RESOLVED**, that each of the Authorized Officers be, and hereby is, authorized and empowered to take all such further actions including, without limitation, to pay all fees, (including without limitation, the fees under the Fee Letters and expenses in accordance with the terms of the Loan Documents), to arrange for and enter into supplemental agreements, instruments, amendments, amendment and restatements, modifications, renewals, replacements, consolidations, substitutions, extensions, certificates or documents relating to the transactions contemplated by any of the Loan Documents and to execute and deliver all such supplemental agreements, instruments, amendments, amendment and restatements, modifications, renewals, replacements, consolidations, substitutions, extensions, certificates or documents in the name and on behalf of the Company, which shall in their sole judgment be necessary, proper or advisable in order to perform the Company's obligations under or in connection with any of the Loan Documents and the transactions contemplated therein, and to carry out fully the intent of the foregoing resolution. The performance of any such further act and the execution of any such document or instrument by any of the aforesaid Authorized Officers of the Company pursuant to these resolutions shall be conclusive evidence that the same have been authorized and approved by the Company in every respect;

**FURTHER RESOLVED**, that all acts and actions taken by any Authorized Officer prior to the date hereof with respect to the transactions contemplated by the Loan Documents (as defined in the DIP Credit Agreement), and any and all agreements, instruments, certificates or documents heretofore executed be, and hereby are, in all respects confirmed, approved and ratified; and

**FURTHER RESOLVED,** that all initially capitalized terms used in the resolutions under the caption "SENIOR SECURED SUPER-PRIORITY DEBTOR-IN-POSSESSION CREDIT AGREEMENT" and otherwise without definition shall have the meanings ascribed to them in the DIP Credit Agreement.

### 4. Retention of Professionals

**NOW, THEREFORE, BE IT RESOLVED** that each of the Authorized Officers be, and they hereby are, authorized and directed to employ the following professionals on behalf of the

Company: (i) the law firm of Kirkland & Ellis LLP and Kirkland & Ellis International LLP, as general bankruptcy counsel, (ii) the law firm of Jackson Walker L.L.P., as co-bankruptcy counsel, (iii) the law firm of Stikeman Elliot LLP, as co-bankruptcy counsel, (iv) the law firm of Mourant Ozannes, as co-bankruptcy counsel, (v) PJT Partners LP, as financial advisor, (vi) AlixPartners, LLP, as restructuring advisor, (vii) Prime Clerk LLC, as notice and claims agent, (viii) A&G Realty Partners, LLC, as a real estate consultant and advisor, and (ix) any other legal counsels, accountants, financial advisors, restructuring advisors or other professionals the Authorized Officers deem necessary, appropriate or advisable; each to represent and assist the Company in carrying out its duties and responsibilities and exercising its rights under the Bankruptcy Code and applicable law (including, but not limited to, the law firms filing any pleadings and responses); and in connection therewith, each of the Authorized Officers be, and hereby is authorized, empowered and directed, in accordance with the terms and conditions hereof, to execute appropriate retention agreements and to cause to be filed appropriate applications for authority to reach such services; and

**FURTHER RESOLVED**, that all acts and deeds previously performed by any of the officers of the Authorized Officers, as may be applicable, prior to the adoption of the foregoing recitals and resolutions that are within the authority conferred by the foregoing recitals and resolutions, are hereby ratified, confirmed and approved in all respects as the authorized acts and deeds of the Authorized Officers, as the case may be.

5. **General**

**NOW, THEREFORE, BE IT RESOLVED**, that in addition to the specific authorizations heretofore conferred upon the Authorized Officers, each of the Authorized Officers (and their designees and delegates) be, and they hereby are, authorized and empowered, in the name of and on behalf of the Company, to take or cause to be taken any and all such other and further action to: execute, acknowledge, deliver, and file any and all such agreements, certificates, instruments, and other documents; and pay all expenses, including but not limited to filing fees, in each case as in such officer's or officers' judgment, shall be necessary, advisable, or desirable to fully carry out the intent and accomplish the purposes of the resolutions adopted herein;

**FURTHER RESOLVED,** that the Board has received sufficient notice of the actions and transactions relating to the matters contemplated by the foregoing resolutions, as may be required by the organizational documents of the Company, or hereby waive any right to have received such notice;

**FURTHER RESOLVED**, that all acts, actions and transactions relating to the matters contemplated by the foregoing resolutions done in the name of and on behalf of the Company, which acts would have been approved by the foregoing resolutions except that such acts were taken before the adoption of these resolutions, are hereby in all respects approved and ratified as the true acts and deeds of the Company with the same force and effect as if each such act, transaction, agreement or certificate has been specifically authorized in advance by resolution of the Board; and

**FURTHER RESOLVED**, that each of the Authorized Officers (and their designees and delegates) be and hereby is authorized and empowered to take all actions or to not take any action in the name of the Company with respect to the transactions contemplated by these resolutions

hereunder, as such Authorized Officers shall deem necessary or desirable in such Authorized Officer's reasonable judgment as may be necessary or convenient to effectuate the purposes of the transactions contemplated herein.

[*Remainder of page intentionally left blank*]

8

| | |
|---|---|
| Fill in this information to identify the case and this filing: | |
| Debtor Name | Tailored Brands, Inc. |
| United States Bankruptcy Court for the: | Southern District of Texas |
| | (State) |
| Case number (If known): | |

## Official Form 202
## Declaration Under Penalty of Perjury for Non-Individual Debtors    12/15

An individual who is authorized to act on behalf of a non-individual debtor, such as a corporation or partnership, must sign and submit this form for the schedules of assets and liabilities, any other document that requires a declaration that is not included in the document, and any amendments of those documents. This form must state the individual's position or relationship to the debtor, the identity of the document, and the date. Bankruptcy Rules 1008 and 9011.

WARNING -- Bankruptcy fraud is a serious crime. Making a false statement, concealing property, or obtaining money or property by fraud in connection with a bankruptcy case can result in fines up to $500,000 or imprisonment for up to 20 years, or both. 18 U.S.C. §§ 152, 1341, 1519, and 3571.

### Declaration and signature

I am the president, another officer, or an authorized agent of the corporation; a member or an authorized agent of the partnership; or another individual serving as a representative of the debtor in this case.

I have examined the information in the documents checked below and I have a reasonable belief that the information is true and correct:

- ☐ *Schedule A/B: Assets-Real and Personal Property (Official Form 206A/B)*
- ☐ *Schedule D: Creditors Who Have Claims Secured by Property (Official Form 206D)*
- ☐ *Schedule E/F: Creditors Who Have Unsecured Claims (Official Form 206E/F)*
- ☐ *Schedule G: Executory Contracts and Unexpired Leases (Official Form 206G)*
- ☐ *Schedule H: Codebtors (Official Form 206H)*
- ☐ *Summary of Assets and Liabilities for Non-Individuals (Official Form 206Sum)*
- ☐ Amended *Schedule*
- ☒ *Chapter 11 or Chapter 9 Cases: List of Creditors Who Have the 30 Largest Unsecured Claims and Are Not Insiders (Official Form 204)*
- ☒ Other document that requires a declaration    **List of Equity Security Holders and Corporate Ownership Statement**

I declare under penalty of perjury that the foregoing is true and correct.

Executed on    **08/02/2020**          ☒ */s/ Holly Etlin*
               MM/ DD/YYYY              Signature of individual signing on behalf of debtor

                                        **Holly Etlin**
                                        Printed name

                                        **Chief Restructuring Officer**
                                        Position or relationship to debtor

Official Form 202    **Declaration Under Penalty of Perjury for Non-Individual Debtors**