# AMERICAN BANKRUPTCY INSTITUTE JOURNAL

*The Essential Resource for Today's Busy Insolvency Professional*

## Value & Cents

Exhibit 15

By Dr. Israel Shaked and Paul Dionne[1]

# Credibility Test: Management Projections vs. Market Evidence



**Dr. Israel Shaked**
The Michel-Shaked Group; Boston



**Paul Dionne**
The Michel-Shaked Group; Boston

*Dr. Israel Shaked is managing director of The Michel-Shaked Group and a professor of finance and economics at Boston University Questrom School of Business. Paul Dionne is a manager with the firm.*

In a bankruptcy, financial projections play a significant role in many different aspects of the process. Whether it is for performing a solvency and capital-adequacy analysis in a fraudulent-conveyance case, or for developing projections for a company's reorganization plan, financial projections and their reliability are crucial. Bankruptcy courts and other courts, including the Delaware Court of Chancery, often express their preference to rely on management's projections as the basis for a given analysis. For example, consider the following from the courts:

> This court has expressed a preference for valuations "based on contemporaneously prepared management projections" because a company's management "ordinarily has the best first-hand knowledge of a company's operations."[2]

In most cases, the court's preference, as expressed above, is justified. Management usually has vast experience within an organization and is familiar with the company's operations, its competitors, and its opportunities and challenges. However, despite the management team's experience, it is inappropriate to blindly accept the projections management produces. As valuation and bankruptcy experts, the authors believe that no one should religiously accept management's projections without first testing the reasonableness of the projections.

In order to determine whether to accept management's projections, a professional should evaluate, among other items, management's ability to accurately forecast in the past and the reasonableness of the projections relative to the company's historical performance and market expectations (where appropriate). The following is a nonexhaustive listing of analyses that are often performed when testing the reasonableness of management's projections: an analysis of (1) the company's historical performance vs. management projections; (2) the company's historical performance compared to its peer group; and (3) management's ability to accurately forecast in the past.

This article examines a case study of a retail company currently in bankruptcy as an example of a situation where management's credibility, when it came to the projections, was unreliable. In this case, the authors' firm was engaged (following the company's chapter 11 filing) to perform solvency and capital adequacy analyses of the bankrupt company in the years leading to its bankruptcy.[3] For confidentiality reasons, this article omits the name of the company and alters certain of the company's financial figures.

## Case Study

A couple of years prior to its bankruptcy, SC Company contemplated a large distribution to its shareholders. As part of this process, SC Company's management retained an investment bank to issue a solvency and capital-adequacy opinion. Specifically, the investment bank was commissioned with assessing whether following the distribution the company was expected to have adequate capital and be solvent. To formulate its opinion, the investment bank adopted the projections provided by SC Company's management. These projections were made for a period of 10 years and included a detailed development of cash flows typically used in performing a discounted-cash-flow (DCF) valuation and analyzing a company's ability to repay its debt.

---

1 Dr. Shaked is a co-author of *A Practical Guide to Bankruptcy Valuation, Second Edition* (ABI 2017) and a former coordinating editor for the *ABI Journal*.
2 *Doft & Co. v. Travelocity.com Inc.*, 2004 WL 1152338, at *5 (Del. Ch. May 20, 2004).
3 The authors thank **Bradley Orelowitz**, senior vice president with The Michel-Shaked Group, for his extensive work on this case.

66 Canal Center Plaza, Suite 600  •  Alexandria, VA 22314  •  (703) 739-0800  •  Fax (703) 739-1060  •  www.abi.org

Following the distribution, SC Company entered bankruptcy, and the distributions suddenly became a contentious point of discussion among the parties involved. The primary disagreement was related to the appropriateness of the investment bank's reliance on SC Company management's projections in developing its solvency and capital-adequacy opinion.

To determine whether management's projections were reasonable, the authors first compared SC Company's historical performance to the projections made by management (and adopted by the investment bank). This analysis found that management's projections greatly contradicted SC Company's historical performance. While historically SC Company was shrinking, with negative revenue growth in eight of nine prior fiscal years, management was forecasting the SC Company to grow annually by 5 percent over the next 10 years. This, by itself, should have been a red flag. Exhibit 1 highlights the "hockey stick" nature of management's revenue projections and the strong contradictions to SC Company's historical performance prior to the distribution.[4]

Similar to its revenue forecasts, SC Company's management projected to significantly increase its store count. Once again, this forecast greatly contradicted the historical trend of SC Company at the time. As shown in Exhibit 2, SC Company's store count declined sharply in the six years prior to the distribution. Despite this decline, SC Company's management projected the company's store count to increase by almost 40 percent in the three years following the distribution. This should have been another red flag.

Once able to determine that management's projections were highly optimistic relative to the company's past performance, the authors decided to investigate further and assess whether there was any evidence indicating that a sudden turnaround at SC Company was likely. Comparing SC Company to its peer group (as determined by the investment banker) further painted SC Company in a poor light.

In developing its projections, management disregarded the intensified nature of its competition and did not consider SC Company's position within its peer group. Upon closer examination, it becomes clear that SC Company underperformed its peer group on virtually every operating and financial metric. For example, consider SC Company's historical revenue growth compared to the group of companies considered by the investment bank to be its peers.

As shown in Exhibit 3, SC Company's historical revenue growth rate in each of the four years prior to the distribution







---

4 It is important to note that the fact that the projections display a "hockey stick" shape, by itself, does not necessarily indicate that the projections are unreasonable.





date was negative. Moreover, in virtually every year during the four years prior to the distribution, SC Company's revenue growth rate was well below the rate exhibited by the lower quartile of its peer group. This is an indication that SC Company was performing poorly prior to the distribution and, given the relatively superior performance of its competitors, would face a virtually impossible task in reversing its declining sales trend.

Similarly, as shown in Exhibit 4, in the four years prior to the distribution, the earnings before interest, taxes, depreciation and amortization (EBITDA) margin[5] for SC Company was significantly below the lower quartile of its peer group. Financial experts often consider EBITDA margin to be a key indicator of a company's ability to generate operating cash flow.

Moreover, as shown in Exhibit 5, SC Company's net return on assets[6] was significantly below that of the lower quartile of its peer group. In addition, note that in all of the four years prior to the distribution, in contrast to SC Company's net return on assets, none of the peer group quartiles analyzed had a negative net return on assets.

Given SC Company's extremely poor operating performance historically, and given SC Company management's unreasonably optimistic forecasts, management's projections should have inspired caution instead of serving as the basis for a financial analysis. In order to justify management's projections, one should analyze management's historical ability to develop credible forecasts prior to coming to a conclusion on the company's solvency and capital adequacy.[7]

The authors compiled management-budgeted sales data for SC Company for the 36 months prior to the distribution, then compared them to the actual sales for that period. Exhibit 6 shows that in 34 out of the 36 months prior to the distribution, the company's actual performance was worse than that projected by management. Management missed its projections 94 percent of the time, which was a clear indication that SC Company's management struggled with predicting its performance, even over the short term. The investment banker valuing SC Company at the time of the distributions should have been concerned by management's lack of ability to develop credible projections.

Courts have been reluctant to adopt management projections where management consistently missed its projections on a historic basis. For example, consider the following quotes from the Delaware Chancery Court: "Management's history of missing its forecasts should have given the Court of Chancery pause,"[8] and "The Court cannot accept that the same people who missed projections three months out in September 2001 by a factor of three (where there was no intervening change to the Company's business) would have been able to produce reliable projections in January 2002 for an entire year."[9]

---

5  EBITDA margin equals EBITDA/Revenue.
6  Net return on assets equals net income/average asset.
7  To the best of the authors' knowledge, the investment banker who provided the solvency and capital-adequacy opinion on SC Company did not perform such an analysis.
8  *Dell Inc. v. Magnetar Global Event Master Fund Ltd.*, 177 A.3d 1, 27 n.129 (Del. 2017).
9  *In re Nine Sys. Corp. S'holders Litig.*, 2014 WL 4383127, at *42 (Del. Ch. Sept. 4, 2014).

### Exhibit 6: SC Company's Monthly Budget vs. Actual Sales

| Month | Variance | Outcome |
|---|---|---|
| June 2012 | -4.4% | Worse |
| July 2012 | -5.6% | Worse |
| August 2012 | -4.3% | Worse |
| September 2012 | -4.5% | Worse |
| October 2012 | -6.3% | Worse |
| November 2012 | -6.7% | Worse |
| December 2012 | -6.9% | Worse |
| January 2013 | -6.6% | Worse |
| February 2013 | -6.6% | Worse |
| March 2013 | -4.5% | Worse |
| April 2013 | -5.8% | Worse |
| May 2013 | -5.1% | Worse |
| June 2013 | -4.3% | Worse |
| July 2013 | -3.9% | Worse |
| August 2013 | -4.5% | Worse |
| September 2013 | -6.1% | Worse |
| October 2013 | -3.1% | Worse |
| November 2013 | -8.2% | Worse |
| December 2013 | -10.1% | Worse |
| January 2014 | -8.0% | Worse |
| February 2014 | -5.7% | Worse |
| March 2014 | -4.8% | Worse |
| April 2014 | -3.9% | Worse |
| May 2014 | -2.8% | Worse |
| June 2014 | 1.8% | Better |
| July 2014 | 3.1% | Worse |
| August 2014 | 2.5% | Better |
| September 2014 | -3.0% | Worse |
| October 2014 | -5.8% | Worse |
| November 2014 | -9.3% | Worse |
| December 2014 | -6.2% | Worse |
| January 2015 | -11.4% | Worse |
| February 2015 | -4.8% | Worse |
| March 2015 | -1.5% | Worse |
| April 2015 | -2.6% | Worse |
| May 2015 | -5.8% | Worse |



Exhibit 7: SC Company's Historical Debt-to-EBITDA vs. Peer Group

| | 2011 | 2012 | 2013 | 2014 |
|---|---|---|---|---|
| SC Company | 4.5x | 5.3x | 7.1x | 4.4x |
| Median | 1.1x | 1.1x | 1.1x | 1.3x |
| Lower Quartile | 1.7x | 1.6x | 1.8x | 1.9x |

Based on the presented evidence in this case, professionals such as an investment bank or the court should not have relied on SC Company management's projections for several reasons, including (1) the drastic difference between management's projections and SC Company's historical performance, (2) SC Company's past performance at the bottom of its industry rank, and (3) management's inability to live up to its promises. Nevertheless, in certain cases, when a company has its own resources or access to capital markets, it is possible (with significant capital expenditures, for example) that its optimistic forecasts (exhibiting a hockey stick shape) will be realized.

However, in the case of SC Company, its cash resources were depleted and the company was highly leveraged. Thus, in assessing whether such a turnaround is a reasonable possibility, the professional often evaluates the company's liquidity and leverage. As shown in Exhibit 7, SC Company's leverage, as measured by the ratio of debt-to-EBITDA, was higher than that of its peer group (as defined by its investment banker) by a factor of 4.0x to 7.0x in the four years prior to the distribution date.

## Conclusion

The case study presented in this article clearly indicates that in the case of SC Company, no one should have adopted management's projections. Moreover, the approval of management's projections by the company's board of directors or investment bankers was not a sufficient reason to justify their reliability. While courts are generally correct in stating that management knows the company the best, it is still important to not blindly accept management projections as being reliable. Independent assessment on the reasonableness of the projections, as well as management's credibility in developing achievable projections, is essential and often necessary.  abi

*Reprinted with permission from the ABI Journal, Vol. XXXVIII, No. 8, August 2019.*

*The American Bankruptcy Institute is a multi-disciplinary, non-partisan organization devoted to bankruptcy issues. ABI has more than 12,000 members, representing all facets of the insolvency field. For more information, visit abi.org.*