# EXHIBIT 1

**Fill in this information to identify the case:**

Debtor 1    THE MEN'S WEARHOUSE, INC.

Debtor 2
(Spouse, if filing) _____

United States Bankruptcy Court for the:   Southern District of Texas

Case number    4:20-bk-33911

Official Form 410

# Proof of Claim

04/19

**Read the instructions before filling out this form. This form is for making a claim for payment in a bankruptcy case. Do not use this form to make a request for payment of an administrative expense. Make such a request according to 11 U.S.C. § 503.**

**Filers must leave out or redact** information that is entitled to privacy on this form or on any attached documents. Attach redacted copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, judgments, mortgages, and security agreements. **Do not send original documents;** they may be destroyed after scanning. If the documents are not available, explain in an attachment.

A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both. 18 U.S.C. §§ 152, 157, and 3571.

**Fill in all the information about the claim as of the date the case was filed. That date is on the notice of bankruptcy (Form 309)** that you received.

## Part 1:   Identify the Claim

**1. Who is the current creditor?**

MICHAEL HOFFMAN
Name of the current creditor (the person or entity to be paid for this claim)

Other names the creditor used with the debtor _____

**2. Has this claim been acquired from someone else?**

☑ No
☐ Yes.  From whom? _____

**3. Where should notices and payments to the creditor be sent?**

Federal Rule of Bankruptcy Procedure (FRBP) 2002(g)

| Where should notices to the creditor be sent? | Where should payments to the creditor be sent? (if different) |
|---|---|
| RICHARD T. BAUM<br>Name | Southern California Labor Law Group<br>Name |
| 11500 West Olympic Blvd, Suite 400<br>Number        Street | 1875 Century Park East, Suite 480<br>Number        Street |
| Los Angeles          CA          90064<br>City          State          ZIP Code | Los Angeles          CA          90067<br>City          State          ZIP Code |
| Contact phone 310.277.2040 | Contact phone 424.231.2366 |
| Contact email rickbaum@hotmail.com | Contact email tprainito@scllgpc.com |

Uniform claim identifier for electronic payments in chapter 13 (if you use one):

__ __ — __ __ __ __ — __ __ __ __ — __ __ __ __ — __ __ __

**4. Does this claim amend one already filed?**

☑ No
☐ Yes.  Claim number on court claims registry (if known) _____    Filed on _____
                                               MM / DD / YYYY

**5. Do you know if anyone else has filed a proof of claim for this claim?**

☑ No
☐ Yes.  Who made the earlier filing? _____

| Part 2: | Give Information About the Claim as of the Date the Case Was Filed |
|---|---|

**6. Do you have any number you use to identify the debtor?**

☑ No

☐ Yes. Last 4 digits of the debtor's account or any number you use to identify the debtor: ____ ____ ____ ____

**7. How much is the claim?**

$_____5,000,000.00. **Does this amount include interest or other charges?**

☑ No

☐ Yes. Attach statement itemizing interest, fees, expenses, or other charges required by Bankruptcy Rule 3001(c)(2)(A).

**8. What is the basis of the claim?**

Examples: Goods sold, money loaned, lease, services performed, personal injury or wrongful death, or credit card.

Attach redacted copies of any documents supporting the claim required by Bankruptcy Rule 3001(c).

Limit disclosing information that is entitled to privacy, such as health care information.

sexual orientation based discrimination and harassment; retaliation

**9. Is all or part of the claim secured?**

☑ No

☐ Yes. The claim is secured by a lien on property.

**Nature of property:**

☐ Real estate. If the claim is secured by the debtor's principal residence, file a *Mortgage Proof of Claim Attachment* (Official Form 410-A) with this *Proof of Claim.*

☐ Motor vehicle

☐ Other. Describe: _____

**Basis for perfection:** _____

Attach redacted copies of documents, if any, that show evidence of perfection of a security interest (for example, a mortgage, lien, certificate of title, financing statement, or other document that shows the lien has been filed or recorded.)

**Value of property:** $_____

**Amount of the claim that is secured:** $_____

**Amount of the claim that is unsecured:** $_____ (The sum of the secured and unsecured amounts should match the amount in line 7.)

**Amount necessary to cure any default as of the date of the petition:** $_____

**Annual Interest Rate** (when case was filed)_____%

☐ Fixed

☐ Variable

**10. Is this claim based on a lease?**

☑ No

☐ Yes. **Amount necessary to cure any default as of the date of the petition.** $_____

**11. Is this claim subject to a right of setoff?**

☑ No

☐ Yes. Identify the property: _____

| 12. **Is all or part of the claim entitled to priority under 11 U.S.C. § 507(a)?**<br><br>A claim may be partly priority and partly nonpriority. For example, in some categories, the law limits the amount entitled to priority. | ☑ No<br>☐ Yes. *Check all that apply:* | **Amount entitled to priority** |
|---|---|---|
| | ☐ Domestic support obligations (including alimony and child support) under 11 U.S.C. § 507(a)(1)(A) or (a)(1)(B). | $_____ |
| | ☐ Up to $3,025* of deposits toward purchase, lease, or rental of property or services for personal, family, or household use. 11 U.S.C. § 507(a)(7). | $_____ |
| | ☐ Wages, salaries, or commissions (up to $13,650*) earned within 180 days before the bankruptcy petition is filed or the debtor's business ends, whichever is earlier. 11 U.S.C. § 507(a)(4). | $_____ |
| | ☐ Taxes or penalties owed to governmental units. 11 U.S.C. § 507(a)(8). | $_____ |
| | ☐ Contributions to an employee benefit plan. 11 U.S.C. § 507(a)(5). | $_____ |
| | ☐ Other. Specify subsection of 11 U.S.C. § 507(a)(___) that applies. | $_____ |
| | * Amounts are subject to adjustment on 4/01/22 and every 3 years after that for cases begun on or after the date of adjustment. | |

---

**Part 3:  Sign Below**

**The person completing this proof of claim must sign and date it. FRBP 9011(b).**

If you file this claim electronically, FRBP 5005(a)(2) authorizes courts to establish local rules specifying what a signature is.

**A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both. 18 U.S.C. §§ 152, 157, and 3571.**

Check the appropriate box:

☐ I am the creditor.
☑ I am the creditor's attorney or authorized agent.
☐ I am the trustee, or the debtor, or their authorized agent. Bankruptcy Rule 3004.
☐ I am a guarantor, surety, endorser, or other codebtor. Bankruptcy Rule 3005.

I understand that an authorized signature on this *Proof of Claim* serves as an acknowledgment that when calculating the amount of the claim, the creditor gave the debtor credit for any payments received toward the debt.

I have examined the information in this *Proof of Claim* and have a reasonable belief that the information is true and correct.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on date    12/18/2020
                    MM / DD / YYYY

/s/ Richard T. Baum
_____
Signature

**Print the name of the person who is completing and signing this claim:**

| Name | RICHARD T. BAUM | | |
|---|---|---|---|
| | First name | Middle name | Last name |
| Title | Attorney | | |
| Company | Law Offices of Richard T. Baum | | |
| | Identify the corporate servicer as the company if the authorized agent is a servicer. | | |
| Address | 11500 West Olympic Boulevard, Suite 400 | | |
| | Number         Street | | |
| | Los Angeles | CA | 90064 |
| | City | State | ZIP Code |
| Contact phone | 310.277.2040 | Email | rickbaum@hotmail.com |

# EXHIBIT 1

Electronically FILED by Superior Court of California, County of Los Angeles on 07/18/2019 03:33 PM Sherri R. Carter, Executive Officer/Clerk of Court, by V. Delgadillo,Deputy Clerk

Taylor M. Prainito (SBN 286965)
tprainito@scllgpc.com
Michael Zelman (SBN 297682)
mzelman@scllgpc.com
**SOUTHERN CALIFORNIA LABOR LAW GROUP, PC**
1875 Century Park East, Suite 480
Los Angeles, CA 90067
Telephone: (424) 231-2366
Facsimile:  (323) 319-5148

Attorneys for Plaintiff,
MICHAEL HOFFMANN

## SUPERIOR COURT OF THE STATE OF CALIFORNIA

## FOR THE COUNTY OF LOS ANGELES, CENTRAL DISTRICT

| | |
|---|---|
| MICHAEL HOFFMANN, an individual;<br><br>Plaintiff,<br><br>v.<br><br>THE MEN'S WEARHOUSE, INC., a Texas Corporation; JARED VAN ORDEN, an individual; DOE 4 TAILORED BRANDS SHARED SERVICES, LLC, a Limited Liability Company of unknown jurisdiction, and DOES 5-100, inclusive;<br><br>Defendants. | Case No. BC 699 909<br><br>**THIRD AMENDED COMPLAINT FOR DAMAGES**<br><br>1. **DISCRIMINATION BASED ON SEXUAL ORIENTATION** [Cal. Gov. Code §12900, *et seq*.];<br>2. **HARASSMENT BASED ON SEXUAL ORIENTATION** [Cal. Gov. Code §12940(j)];<br>3. **DISCRIMINATION BASED ON AGE** [Cal. Gov. Code §12900, *et seq*;<br>4. **HARASSMENT BASED ON AGE** [Cal. Gov. Code §§12900, *et seq*];<br>5. **FAILURE TO PREVENT HARASSMENT, DISCRIMINATION, AND RETALIATION** [Cal. Gov. Code §12940(k)(h) and 12945(l)];<br>6. **RETALITION** [Cal. Gov. Code §12900 *et. seq.*]<br>7. **WRONGFUL CONSTRUCTIVE TERMINATION** [in violation of Public Policy];<br>8. **INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS;**<br>9. **WHISTLEBLOWER RETALIATION** [Cal. Labor Code §1102.5];<br>10. **DEFAMATION** [Cal. Civil Code § 46]<br><br>**UNLIMITED JURISDICTION** |

1

**THIRD AMENDED COMPLAINT FOR DAMAGES**

**[Amount in Controversy Over $25,000]**

**DEMAND FOR JURY TRIAL**

Plaintiff, Michael Hoffmann, alleges, on the basis of personal knowledge and/or information and belief:

## SUMMARY

This is an action by plaintiff, Michael Hoffmann ("plaintiff" or "Hoffmann"), whose employment with defendants The Men's Wearhouse. ("Men's Wearhouse"), Tailored Brands Shared Services, LLC ("Tailored Brands Shared") and Jared Van Orden ("Van Orden"), was wrongfully terminated.  Plaintiff brings this action against defendants for economic, non-economic, compensatory, and punitive damages, pursuant to Civil Code section 3294, pre-judgment interest pursuant to Code of Civil Procedure section 3291, and costs and reasonable attorneys' fees pursuant to Government Code section 12965(b) and Code of Civil Procedure section 1021.5.

## JURISDICTION AND VENUE

1.    The actions at issue in this case occurred in the State of California, in the County of Los Angeles.  Under the California Fair Employment and Housing Act, this case can alternatively, at plaintiff's choice, be filed:

> [I]n any county in the state in which the unlawful practice is alleged to have been committed, in the county in which the records relevant to the practice are maintained . . . or in the county in which the aggrieved person would have worked . . .

California Government Code § 12965(b) (emphasis added).

2.    Plaintiff at all times during his employment, worked in the State of California and was a resident of Los Angeles County.

//

//

2

**THIRD AMENDED COMPLAINT FOR DAMAGES**

1

**PARTIES TO THE ACTION**

2

3.     Plaintiff Hoffmann is, and at all times mentioned in this Complaint was, a

3

resident of the County of Los Angeles, State of California

4

4.     Defendant Van Orden is, and at all times mentioned in this Complaint is

5

believed to be a resident of the County of Orange, State of California.

6

5.     Defendant, Men's Wearhouse is a corporation organized under the laws of the

7

State of Texas. Plaintiff is informed and believes, and thereon alleges, that Defendant Men's

8

Wearhouse at all relevant times, owned and/or leased property, operated a facility and/or

9

employed and/or jointly employed individuals including, Plaintiff in the County of Orange.

10

6.     Defendant, Tailored Brands Shared, is a limited liability company whose place

11

of organization is unknown.  Plaintiff is informed and believes, and thereon alleges, that

12

Tailored Brands Purchasing's principal place of business is located in Fremont, California.

13

7.     Defendants Men's Wearhouse, Tailored Brands Shared and Does 5-100

14

(hereinafter collectively referred to as "Defendants"), inclusive, was Plaintiff's employer

15

within the meaning of California Government Code §12940 et seq.

16

8.     The true names and capacities, whether individual, corporate, associate, or

17

otherwise, of the Defendants named herein as Does 1-100, inclusive, are unknown to

18

Plaintiff Hoffmann who will amend this complaint to allege such names and capacities as

19

soon as they are ascertained.  Each Defendant designated herein as Doe is in some manner

20

legal responsible for the unlawful acts and damages alleged herein.

21

*9. Relationship of defendants:*

22

i. All defendants and all Doe defendants directly and/or indirectly employed

23

plaintiff, as defined under the regulations, statutes, and interpreting case law, including

24

California Government Code section 12926(d).

25

ii.     All defendants and all Doe defendants compelled, coerced, aided, and/or

26

abetted the discrimination, retaliation, and harassment alleged throughout, which is pro-

27

hibited under California Government Code section 12940(i).

28

---

3

**THIRD AMENDED COMPLAINT FOR DAMAGES**

iii.     All defendants and all Doe defendants were acting as the agents of all other defendants and employers, as defined under the regulations, statutes, and interpreting case law, including California Government Code section 12926(d).

iv.     All actions of all defendants were taken by employees, supervisors, executives, officers, and directors during employment with all defendants, on behalf of all defendants, and engaged in, authorized, ratified, and approved of the conduct of all other defendants.

v.     Plaintiff is informed and believes, and on that basis alleges, that, at all times relevant hereto, all defendants, and each of them, were the principals, agents, servants, employers, employees, partners, joint venturers, predecessors in interest, successors in interest, and/or authorized representatives of each of the other defendants, were at all times relevant herein acting within the purpose, course and scope of their agency, service, employment, partnership, joint venture, and/or representation, and were doing so with the knowledge, permission, and consent of their principals, employers, partners, joint venturers, and co-defendants, and each of them.  Plaintiff further alleges that each and every defendant was negligent, careless, and legally liable in the selection and hiring of each and every other defendant as its agent, servant, employee, consultant, assistant, representative, partner, and/or joint venturer.

vi.     All defendants compelled, coerced, aided, and/or abetted the discrimination, retaliation, and harassment alleged in this Complaint, which conduct is prohibited under California Government Code section 12940(i).  All defendants were responsible for the events and damages alleged herein, including on the following bases: (a) defendants committed the acts alleged; (b) at all relevant times, one or more of the defendants was the agent or employee, and/or acted under the control or supervision of, one or more of the remaining defendants and, in committing the acts alleged, acted within the course and scope of such agency and employment and/or is or are otherwise liable for plaintiff's damages; (c) at all relevant times, there existed a unity of ownership and interest

**THIRD AMENDED COMPLAINT FOR DAMAGES**

between or among two or more of the defendants such that any individuality and sepa-rateness between or among those defendants has ceased, and defendants are the alter egos of one another.  Defendants exercised domination and control over one another to such an extent that any individuality or separateness of defendants does not, and at all times herein mentioned did not, exist.  Adherence to the fiction of the separate existence of defendants would permit abuse of the corporate privilege and would sanction fraud and promote injustice.  All actions of all defendants were taken by employees, supervisors, executives, officers, and directors during employment with all defendants, were taken on behalf of all defendants, and were engaged in, authorized, ratified, and approved of by all other defendants.

> vii.     Defendants directly and indirectly employed plaintiff Hoffmann, as defined in the Fair Employment and Housing Act ("FEHA") at Government Code section 12926(d).

> viii.     In addition, defendants compelled, coerced, aided, and abetted the discrimination, which is prohibited under California Government Code section 12940(i).

10.     Finally, at all relevant times mentioned herein, all defendants acted as agents of all other defendants in committing the acts alleged herein.

## STATEMENT OF FACTS

11.     Defendants at all relevant times, were private companies each, and/or together, employing more than five employees in California and were, and are, covered employer under the California Fair Employment and Housing Act ("FEHA").

12.     Plaintiff began working for Defendants in or around April 2014, when he was hired for the position "Training Manager" with the expectation that he would be promoted to an "Assistant Manager" position after completing training. Hoffmann came to defendants with a background of 15+ years of experience in sales, including management experience. At all times during Hoffmann's employment, Hoffmann was qualified to conduct to his job

**THIRD AMENDED COMPLAINT FOR DAMAGES**

duties and executed his job duties in an exemplary manner.  Hoffmann regularly received glowing feedback from customers for his great customer service.  Hoffmann also received positive performance reviews throughout his employment with Defendants and received pay raises. Throughout Hoffmann's employment with Defendants, he was consistently one of Defendants' top salesmen, repeatedly making Defendants' "Star List."

13.     At all times during Hoffmann's employment, he was over forty (40) years old and was an open homosexual.

14.     Initially when Hoffmann was hired, he was placed to work at Defendants' store located in Cerritos.  He worked at that store where he completed the limited training that Defendants offered.   In or around 2015, after the company went through a reorganization, Hoffmann was transferred to Defendants' store located in Torrance.  At that Torrance store, Hoffmann reported to the store manager, Luis Carpentier. Hoffmann worked at the Torrance location until Carpentier decided to transfer him to Defendants' Huntington Beach store, where he would be an Assistant Manager of the retail division.

15.     Hoffmann welcomed the transfer to Defendants' Huntington Beach location as it was closer to where he resided.  This was important to Hoffmann because his mother had recently become very ill with a serious medical condition, that required her to move in with Hoffmann.  Hoffmann needed to be close to home and at times would require time off from work so that he could care for his sick mother, which he communicated to Defendants.

16.     Hoffmann experienced some difficulty at the Huntington Beach location when the store manager did not provide him any assistance or backing.  There was one occasion when another employee, Ceaser Sandes, a younger employee who Hoffmann believes to be under 40 years or old, or in or around his early thirties, was the Assistant Manager of Formal/Rental Wear, was looking at pornography on his phone. Sandes attempted to show the pornography to Hoffmann, who resisted and told Sandes to put it away.  After that incident, Sandes became increasingly disrespectful toward Hoffmann.

17.     One day, when Defendants were particularly busy, Hoffmann asked Sandes to

**THIRD AMENDED COMPLAINT FOR DAMAGES**

assist a couple who were interested in formal wear.  Sandes refused to help the customers. When Sandes continued to refuse, Hoffmann politely asked Sandes to please do his job, to which Sandes rudely and disrespectfully responded "You think you're all that, you do it." Hoffmann, taken aback by Sandes disrespectful attitude and statement, which he believed to be a slight on his sexual orientation, muttered some words in response and proceeded with his duties.  Later, Sandes falsely reported to Defendants' human resources department that Hoffmann had called him "a piece of shit."  Hoffmann denied Sandes' false accusations but was nevertheless written up anyway.

18.   Hoffmann was dismayed by overall lack of support that he received from Defendants' management and human resources and decided to resign from his position when he was presented with a new career opportunity.

19.   When Hoffmann resigned from his position, Stephanie Nishioka, Defendants' regional manager, expressed that she was sorry to see Hoffmann go, and communicated to Hoffmann that he had been a tremendous asset to Defendants and that in the event Hoffmann were to change his mind, he would be welcomed back with opened arms.

20.   Hoffmann considered Nishioka's statement and reinforcement that he had been excellent at job with Defendants.  Prior to completing the training program at his new position, Hoffmann reached out to Nishioka and expressed interest in returning to work. Nishioka happily looked for a store placement for Hoffmann.  While no positions in management were presently open, she told him that he could work as a Wardrobe Consultant position at their Brea store.

21.   Hoffmann accepted the position and returned to work for Defendants in early 2016 at the Brea store, where he reported to his manager, Syed Dolatshani ("Dolatshani.") Dolatshani was a young male who was under forty years old.

22.   Dolatshani was impressed by Hoffmann's performance and when a 2nd Assistant Manager position became available at the store, he offered the position to Hoffmann.  Hoffmann was happy that Dolatshani was offering him the position, but due to

7

**THIRD AMENDED COMPLAINT FOR DAMAGES**

his mother's health condition and his need to be available for her, had to decline the promotion.

23.     Hoffmann quickly began to feel very uncomfortable and unwelcome at the Brea location when another employee, Defendant Jared Van Orden, began to repeatedly make discriminatory, harassing and offensive comments about Hoffmann's sexual orientation.  Van Orden is approximately 20 years younger than Hoffmann and is not a homosexual.

24.     Hoffmann tried his best to ignore Van Orden and the comments and go about his job.  Hoffmann also did not feel comfortable reporting Van Orden's comments to Dolatshani, as Dolatshani as closer in age with Van Orden and Hoffmann was aware that Van Orden and Dolatshani were friends and would socialize outside of work.  Dolatshani was not Hoffmann's manager for a significant period of time, as he took a medical leave of absence and never returned.

25.     Defendants assigned Scott Carlson to fill Dolatshani's position. Carlson was a male who Hoffmann believes was in his mid-30s and was a heterosexual.

26.     Like Dolatshani, Carlson also quickly became friends with Van Orden, and Hoffmann became aware that the two young men socialized outside of work.

27.     As time passed, Van Orden's comments about Hoffmann's sexual orientation became more frequent and more severe.  For example, when a group of employees were discussing a hypothetical apocalypse or World War III, Van Orden declared to the group that Hoffmann would be "his first sacrifice" because "fags don't procreate."  Hoffmann immediately felt uncomfortable and embarrassed by Van Orden's comment and found the comment to be discriminatory and harassing.  Hoffmann reported the incident to Carlson, who blew off Hoffmann's report and hold him that he could not "prove it" and that he should "let it go."

28.     Van Orden's comments and offensive conduct did not cease.  One day when Hoffmann arrived to work, he went to the backroom where he saw Van Orden shirtless,

**THIRD AMENDED COMPLAINT FOR DAMAGES**

ironing his shirt for the day.  Hoffmann ignored Van Orden, but Van Orden began to accuse Hoffmann of looking at him without his shirt on and making offensive statements which implied he believed Hoffmann had sexual interest in him. Van Orden made these offensive, harassing comments in front of Defendants' tailors, who were also present.  Hoffmann felt embarrassed, harassed and humiliated by Van Orden's statement and conduct.

29.    In addition to constantly and continuously making harassing comments about Hoffmann's sexual orientation, Hoffmann began to become concerned about Van Orden's ability to conduct his job duties and for Defendants' professional appearance/reputation. Hoffmann became aware that Van Orden was smoking marijuana while on duty and would even share marijuana with the stores' customers.  Van Orden's marijuana usage while on the job was not a secret, as Hoffmann heard several employees make comments about it or comment about Van Orden's eyes appearing red from smoking marijuana.

30.    Hoffmann believed Van Orden was engaging in illegal conduct by smoking marijuana at the store and providing it to customers.  Hoffmann also believed that this conduct was in violation of Defendants' rules, policies and procedures.  Accordingly, Hoffmann reported the conduct to Carlson, who yet again, dismissed Hoffmann's report and told him "don't point fingers."

31.    It became apparent that Defendants did speak to Van Orden about Hoffmann's report as Van Orden began going around the store saying, "someone is saying I get high at work."  Hoffmann immediately became fearful that Defendants would reveal to Van Orden that Hoffmann made the report and that Van Orden would further retaliate against him.

32.    Accordingly, Hoffmann contacted Nishioka and asked to interview for a management position at Defendants' Orange store.  Nishioka advised Hoffmann that they already had another candidate in mind for the position.

33.    When a 2nd Assistant Manager position opened at the Orange location, Nishioka called Hoffmann with the store manager, Ashlea Rahn, and offered him the position.  Hoffmann accepted the position so that he would no longer have to work with Van

**THIRD AMENDED COMPLAINT FOR DAMAGES**

Orden.

34.     Unfortunately, after transferring to the Orange store, Hoffmann once again did not receive any support from management.  One particular young, twenty-something male, was insubordinate and disrespectful toward Hoffmann.  Hoffmann offered to talk to the employee in an attempt to see if they work out their differences, but the man refused to talk with him.  Hoffmann reported the conflict to Rahn, who did not take his report seriously and laughed about it.  Hoffmann was stunned at Rahn's unprofessionalism and lack of concern, that he responded that he would speak with Nishioka about the situation and left.

35.     Before calling Nishioka, Hoffmann spoke to Carlson, who told him that the store's quality was declining without him.  Carslon also told Hoffmann that he was having difficulties with Van Orden, who was spreading rumors about another employee, including posting a false Yelp! review about her.

36.     When Hoffmann reported his concerns about Rahn to Nishioka, Nishioka suggested that Rahn and Hoffmann sit down and discuss the incident.  Hoffmann followed Nishioka's direction and spoke with Rahn.  The meeting did not go well as Hoffmann continued to feel that Rahn was not talking him or his concerns seriously and left the conversation. When Hoffmann returned to work, Rahn and Hoffmann spoke again, and mutually apologized.  Hoffmann was informed, however, that by leaving the conversation, it was considered job abandonment, and Hoffmann was forced to sign a resignation. Defendants assured Hoffmann that this was "just a formality" and his position was immediately reinstated, and he returned to work.

37.     Carlson continued to tell Hoffmann that the Brea store was deteriorating. Hoffmann's sales (and thus commission earnings) had been higher in Brea, and after the incident with Rahn, and Carlson's apparent support, decided to transfer back to Defendants' Brea store.

38.     Unfortunately, when Hoffmann returned to the Brea store, the circumstances with Van Orden had not improved.  Hoffmann observed Van Orden regularly coming to

work appearing hung over and smelling like alcohol.  On or around May 29, 2017, Hoffmann was informed that Van Orden was sent home because he arrived to work intoxicated. Hoffmann decided to discuss with Carlson some of his concerns regarding Van Orden, including reporting that he believed that Van Orden being intoxicated and/or hung over at work was a contributing factor to the Brea store's deterioration, and shared some ideas that he had that he believed would improve the store's appearance.  While reporting his concerns, Hoffmann suggested to Carlson that perhaps he was a better candidate for the store's management position than Van Orden.

39.     The next day that Hoffmann was scheduled to work, he received a call from Nishioka, informing him that he could not report to work, and that Defendants' human resources office would be contacting him.

40.     When Defendants' human resources manager Mary Brown ("Brown"), an employee of Tailored Shared Services and a heterosexual female who is in her thirties, called Hoffmann, she informed him that Van Orden claimed that Hoffmann sexually assaulted him by sticking his finger in his buttocks, and that they would have to investigate the allegations. As a human resources manager, it was part of Brown's duties and responsibilities to investigate employees' complaints regarding discrimination, harassment and/or retaliation based on protected classes.

41.     During Hoffmann's call with Brown, Hoffmann made it to clear to Brown that he never touched Van Orden, let alone sexually assaulted him.  Hoffmann reported to Brown the same concerns that he previously reported to Carlson – that Van Orden was smoking marijuana on the job.  Hoffmann also shared with Brown other employees' concerns regarding Van Orden that had been brought to his attention regarding Van Orden consuming alcohol and/or marijuana while on the job.  Hoffmann further reported to Brown that Van Orden was only making the allegations that he sexually assaulted him *because he is gay*.

42.     Despite Hoffmann's reports that Van Orden was making false, defamatory, harassing, discriminatory statements about him because of his sexual orientation, Brown

further discriminated and retaliated against Hoffmann by not taking any action to investigate Hoffmann's reports regarding Van Orden's discriminatory, retaliatory conduct as it related his sexual orientation.

43.     Hoffmann was humiliated when he had to inform his partner of nine years and his mother that he was not able to report to work because he was being accused of sexual assault.

44.     Eventually, Nishioka called Hoffmann and informed him that they completed their investigation and determined found that Van Orden's allegations were false. Nevertheless, Defendants would not permit Hoffmann to return to work at the Brea store. Nishioka further claimed that no other store in near vicinity had any openings.  While Hoffmann felt briefly vindicated when his name was cleared of the sexual assault allegations, he felt that Defendants were punishing him and retaliating against him when they assigned him to work in their Mission Viejo store, which would be a 2+ hour commute for Hoffmann.

45.     In addition to transferring Hoffmann out of the Brea store, Brown also decided that Hoffmann should receive a disciplinary action in his personnel file, despite the fact that Brown was unable to substantiate any claims of misconduct by Hoffmann.  Brown's collected failure to investigate Hoffmann's complaints of discrimination and retaliation and decision to discipline Hoffmann were all discriminatory and retaliatory in nature and based upon Hoffmann's sexual orientation.

46.     When Hoffmann called the Mission Viejo store manager, Jacob Johnson ("Johnson"), Johnson was completely unaware of Hoffmann's transfer.  Hoffmann felt embarrassed when he had to explain the situation to Johnson.  Hoffmann discussed with the Mission Viejo store manager that the location would be difficult as it was a long commute and he was concerned about the condition of his vehicle.  Hoffmann also discussed that he was taking care of his mother, who had a serious medical condition, and was concerned that he was so far away from his home.

**THIRD AMENDED COMPLAINT FOR DAMAGES**

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

47.     On June 5, 2017, Hoffmann lodged a formal complaint with Defendants' Human Resources and Employee Relations regarding his mistreatment on the basis of being "an openly gay man."  Since Brown was on vacation, Hoffmann's complaint was forwarded to another Tailored Brands Shared Services Human Resources manager, Greg Kinnison ("Kinnison"), for investigation.  Kinnison investigated Hoffmann's complaints that Van Orden made discriminatory and harassing remarks such as calling him a "fag" and **substantiated** Hoffmann's reports.  Kinnison failed to investigate Hoffmann's complaints that the transfer to Brea was discriminatory and retaliatory and that Hoffmann had been mistreated by Defendants because of his sexual orientation.

48.     Defendants also substantiated Hoffmann's reports that Van Orden was arriving to work intoxicated and smoking marijuana while at work.

49.     Despite the fact that Kinnison substantiated Hoffmann's report that Van Orden called him a "fag" Kinnison refused to take any remedial action against Van Orden for the homophobic, hateful language.  Defendants failed to protect Hoffmann because they were afraid of the "optics" if Van Orden were disciplined for calling Hoffmann a fag.

50.     Defendants refusal to take remedial action against Hoffmann and protect Hoffmann from hate speech, Van Orden's false defamatory allegations and refusal to address his 2+ hour commute were all further discrimination and/or retaliation of Hoffmann's sexual orientation and/or age.

51.     Hoffmann made an effort to work at the Mission Viejo location.  However, Hoffmann could not ignore, let alone forget, that Defendants had completely failed to respond to his report that he was being mistreated and retaliated against because of his sexual orientation.  For years, Hoffmann had felt unsupported by Defendants and his management teams and believed that he was constantly discriminated against and harassed based upon his age and/or sexual orientation.  Hoffmann could not believe that he was being punished after Van Orden made serious, defamatory accusations about him, and that he had to travel hours each day, despite the fact that he needed to be close to home due to his mother's

**THIRD AMENDED COMPLAINT FOR DAMAGES**

serious medical condition.  Accordingly, the conditions had become so intolerable that on June 15, 2017, Hoffmann decided that he had no other choice than to resign from his position.

52.     Defendants The Mens Wearhouse, Tailored Brands, Tailored Brands Purchasing, and Tailored Brands Shared jointly employed Hoffmann.

53.     Defendants were responsible either directly or indirectly for paying Hoffmann the wages he earned through the course of is employment with Defendants.

54.     Defendants, and each of them, had the power to control Hoffmann's working conditions, which included, but was not limited to: the power to hire Hoffmann, terminate his employment, transfer him, demote or promote his position, and issue disciplinary action against Hoffmann.

55.     The Mens Wearhouse, Tailored Brands Purchasing, and Tailored Brands Purchasing are each wholly owned subsidiaries to Tailored Brands, a publicly traded company.  All employees of Tailored Brands' subsidiaries are employees of Tailored Brands.  Tailored Brands represents to the public that it employees 20,000 employees across the United States, Canada and UK.  Tailored Brands provides employee benefits, such as healthcare and retirement benefits, to each of its subsidiary employees, including Hoffmann.

56.     Tailored Brands' website includes job postings and job opportunities for its subsidiary, The Mens' Wearhouse.

57.     Tailored Brands, The Mens Wearhouse, Tailored Brands Purchasing, and Tailored Brands Purchasing all share the same corporate headquarters and/or principal place of business located in Fremont California and Houston Texas.

58.     All employees of Tailored Brands' stores and/or brands, including Hoffmann, receive the same merchandise discounts as an employee incentive of employment.

59.     Defendants share corporate officers and/or board of directors, including but not limited to Executive Vice President of Human Resources Andrew Iwaskow, whom Defendants Director of Human Resources Pamela Carpenter reports directly to.   Per

Defendants policies, practices and procedures, if Hoffmann had a work-related issue or was experiencing discrimination, harassment and/or retaliation in the work place, Hoffmann was to report said discrimination, harassment and/or retaliation directly to Carpenter or one of her subordinates.

60.     Tailored Brands and each of its subsidiaries including Mens Wearhouse, Tailored Brands Purchasing and Tailored Brands Shared shared a common intranet. Hoffmann had access to this intraportal.  It was Defendants intention that Hoffmann would be able to access Defendants company policies, practices and procedures stored through this common intranet portal.

61.     Throughout Hoffmann's employment, Tailored Brands controlled the rules within the employee handbook as well as Defendants' Business Code of Conduct that were distributed by Plaintiff and that both Defendants and Plaintiff were to abide by during and throughout Plaintiff's employment, employees share the same @tailoredbrands.com e-mail domain.

62.     *Economic damages:*  As a consequence of defendants' conduct, plaintiff has suffered and will suffer harm, including lost past and future income and employment benefits, damage to his career, and lost wages, overtime, unpaid expenses, and penalties, as well as interest on unpaid wages at the legal rate from and after each payday on which those wages should have been paid, in a sum to be proven at trial.

63.     *Non-economic damages:*  As a consequence of defendants' conduct, plaintiff has suffered and will suffer psychological and emotional distress, humiliation, and mental and physical pain and anguish, in a sum to be proven at trial.

64.     *Punitive damages:*  Defendants' conduct constitutes oppression, fraud, and/or malice under California Civil Code section 3294 and, thus, entitles plaintiff to an award of exemplary and/or punitive damages.

a.  *Malice:*  Defendants' conduct was committed with malice within the meaning of California Civil Code section 3294, including that (a) defendants acted with intent to

cause injury to plaintiff and/or acted with reckless disregard for plaintiff's injury, including by terminating plaintiff's employment and/or taking other adverse job actions against plaintiff because of his age, race, disability, religion, and/or good faith complaints, and/or (b) defendants' conduct was despicable and committed in willful and conscious disregard of plaintiff's rights, health, and safety, including plaintiff's right to be free of discrimination, harassment, retaliation, and wrongful employment termination.

       b. *Oppression:*   In addition, and/or alternatively, defendants' conduct was committed with oppression within the meaning of California Civil Code section 3294, including that defendants' actions against plaintiff because of his age, race, disability, religion, and/or good faith complaints were "despicable" and subjected plaintiff to cruel and unjust hardship, in knowing disregard of plaintiff's rights to a work place free of discrimination, harassment, retaliation, and wrongful employment termination.

       c. *Fraud:*  In addition, and/or alternatively, defendants' conduct, as alleged, was fraudulent within the meaning of California Civil Code section 3294, including that defendants asserted false (pretextual) grounds for terminating plaintiff's employment and/or other adverse job actions, thereby to cause plaintiff hardship and deprive him of legal rights.

65.   *Attorneys' fees:*  Plaintiff has incurred and continues to incur legal expenses and attorneys' fees.

66.   *Exhaustion of administrative remedies:*  Prior to filing this action, plaintiff exhausted his administrative remedies by filing a timely administrative complaint with the Department of Fair Employment and Housing ("DFEH") and receiving a DFEH right-to-sue letter.

//

**THIRD AMENDED COMPLAINT FOR DAMAGES**

1

2

3

**FIRST CAUSE OF ACTION**

**Discrimination Based On Sexual Orientation**

**in Violation of Cal. Gov. Code §12940(a)**

**[Against Defendant The Men's' Wearhouse, Tailored Brands**

**Shared and Does 5 to 20, Inclusive]**

67.     The allegations set forth in paragraphs 1 through 66 are re-alleged and incorporated herein by reference.

68.     At all times herein mentioned, the FEHA, Government Code § 12940 et. seq., was in full force and effect and binding on Defendants.  These statutes required Defendants to refrain from discriminating against any employee on the basis of sexual orientation.

69.     Plaintiff is homosexual.

70.     During Plaintiff's employment with, Defendants, through their supervisors, personnel and agents, including Defendant Van Orden discriminated against Plaintiff because of his sexual orientation by subjecting him to adverse employment conditions, including, but not limited to, unjust criticism, dismissive treatment, lodging false sexual harassment claim against him, transferring him to a new location, suspension, and, ultimately, constructively terminating his employment.

71.     As a proximate result of Defendants' willful, knowing and intentional discrimination against Plaintiff, Plaintiff has lost employment earnings and benefits, past and future, according to proof.

72.     As a proximate result of said discrimination, Plaintiff has suffered emotional distress, physical and mental injuries and general damages, past and future, in a sum according to proof.

73.     As a proximate result of said discrimination, Plaintiff has incurred, and will continue to incur, attorney's fees and costs.

74.     Defendants have committed the acts herein alleged maliciously and

17

**THIRD AMENDED COMPLAINT FOR DAMAGES**

oppressively, with the wrongful intention of injuring Plaintiff, with an improper and intentional motive amounting to malice and in conscious disregard of Plaintiff 's rights. Accordingly, Plaintiff requests the assessment of punitive damages against Defendants, in an amount appropriate to punish and make an example of them.

## SECOND CAUSE OF ACTION

### Harassment Based On Sexual Orientation
### in Violation of Cal. Gov. Code §12940(j)
### [Against all Defendants]

75.    The allegations set forth in paragraphs 1 through 74 are re-alleged and incorporated herein by reference.

76.    At all times mentioned herein, FEHA, Government Code §12940 (j) was in full force and binding on Defendants.  This statute required Defendants to refrain from harassing an employee on the basis of his or her sexual orientation.

77.    During Plaintiff's employment, Defendants through their supervisors, human resources personnel and agents, including Defendant Van Orden harassed Plaintiff because of his sexual orientation, by subjecting him to a hostile work environment based on acts and comments, and subjecting him to unwarranted criticism, scrutiny, reprimands of Plaintiff, lodging false sexual harassment claim against him, suspending him and, ultimately, constructively terminating his employment.

78.    As a proximate result of Defendants' misconduct, Plaintiff has incurred lost employment earnings and benefits, past and future, according to proof.

79.    As a proximate result of Defendants' misconduct, Plaintiff has suffered emotional distress, physical and mental injuries and general damages, past and future, in a sum according to proof.

80.    As a proximate result of Defendants' misconduct, Plaintiff has incurred, and will continue to incur, attorney's fees and costs.

**THIRD AMENDED COMPLAINT FOR DAMAGES**

81.     Defendants have committed the acts herein alleged maliciously, fraudulently and oppressively, with the wrongful intention of injuring Plaintiff, with an improper and intentional motive amounting to malice and in conscious disregard of Plaintiff's rights. Accordingly, Plaintiff requests the assessment of punitive damages against Defendants, in an amount appropriate to punish and make an example of them.

**THIRD CAUSE OF ACTION**

**Discrimination Based On Age in**

**Violation of Cal. Gov. Code §12940(a)**

**[Against Defendant The Men's' Wearhouse,**

**Tailored Brands Shared, and Does 5 to 20, Inclusive]**

82.    The allegations set forth in paragraphs 1 through 81 are re-alleged and incorporated herein by reference.

83.    At all times herein mentioned, FEHA, Government Code section 12940, *et seq.,* was in full force and effect and was binding on Defendants.  This statute requires Defendant to refrain from discriminating against any employee because he or she is more than 40 years old.  Within the time provided by law, plaintiff filed a complaint with the DFEH, in full compliance with administrative requirements, and received a right-to-sue letter.

84.    During Plaintiff's employment with Defendants, Defendants, through their supervisors, engaged in actions that had a negative impact on the treatment of employees who were more than 40 years old.  Specifically, Defendants discharged older employees with greater frequency than younger employees, hired fewer employees who were older than 40, and gave better jobs and benefits to younger employees.

85.    During Plaintiff's employment with Defendants, Defendants intentionally engaged in age discrimination by discharging employees over the age of 40 with greater frequency than other employees.  During Plaintiff's employment with Defendants, Defendants had a pattern and practice of discriminating against employees who were more than

19

**THIRD AMENDED COMPLAINT FOR DAMAGES**

40 years old.

86.   Plaintiff was a qualified employee at the time of the termination of his employment and was more than 40 years old.  Defendants continued to hire younger employees to replace the older employees whom they were discharging or otherwise forcing out of the company.  All of Defendants' conduct raises an inference of discrimination.

87.   Defendants' conduct, as alleged, violated FEHA, and Defendants committed unlawful employment practices, including by the following, separate bases for liability:

a.   Discharging, barring, refusing to transfer, retain, hire, select, and/or employ, and/or otherwise discriminating against plaintiff, in whole or in part on the basis of plaintiff's age and/or other protected characteristics, in violation of Government Code section 12940(a);

b.   Harassing plaintiff and/or creating a hostile work environment, in whole or in part on the basis of plaintiff's age and/or other protected characteristics, in violation of Government Code section 12940(j);

c.   Failing to take all reasonable steps to prevent discrimination and harassment based on age and/or other protected characteristics, in violation of Government Code section 12940(k);

d.   Retaliating against Plaintiff for seeking to exercise rights guaranteed under FEHA and/or opposing Defendants' failure to provide such rights, in violation of Government Code section 12940(h).

88.   On the basis of the above, Plaintiff believes and alleges that his age was a substantial motivating factor in defendants' termination of his employment.

89.   As a proximate result of defendants' willful, knowing, and intentional discrimination against Plaintiff, Plaintiff has sustained and continues to sustain substantial losses of earnings and other employment benefits.

90.   As a proximate result of defendants' willful, knowing, and intentional discrimination against plaintiff, plaintiff has suffered and continues to suffer humiliation, emotional

**THIRD AMENDED COMPLAINT FOR DAMAGES**

distress, and mental and physical pain and anguish, all to his damage in a sum according to proof.

91.   Defendants' discrimination was done intentionally, in a malicious, fraudulent, oppressive manner, entitling plaintiff to punitive damages.

92.   Plaintiff has incurred and continues to incur legal expenses and attorneys' fees. Pursuant to Government Code section 12965(b), plaintiff is entitled to recover reasonable attorneys' fees and costs (including expert costs) in an amount according to proof.

## FOURTH CAUSE OF ACTION

### Harassment Based On Age

### in Violation of Cal. Gov. Code §12940(j)

### [Against Defendant The Men's' Wearhouse, Tailored

### Brands, Tailored Brands Shared and Does 5 to 20, Inclusive]

93.   The allegations set forth in paragraphs 1 through 92 are re-alleged and incorporated herein by reference.

94.   Defendants' conduct, as alleged, violated FEHA, Government Code section 12900, *et seq.,* and defendants committed unlawful employment practices, including by the following, separate bases for liability:

   a.   Harassing plaintiff and/or creating a hostile work environment, in whole or in part on the basis of plaintiff age and/or other protected characteristics, in violation of Government Code section 12940(j);

   b.   Failing to take all reasonable steps to prevent discrimination, harassment, and retaliation based on age, in violation of Government Code section 12940(k).

95.   As a proximate result of defendants' willful, knowing, and intentional harassment of plaintiff, plaintiff has sustained and continues to sustain substantial losses of earnings and other employment benefits.

96.   As a proximate result of defendants' willful, knowing, and intentional harassment

**THIRD AMENDED COMPLAINT FOR DAMAGES**

of plaintiff, plaintiff has suffered and continues to suffer humiliation, emotional distress, and physical and mental pain and anguish, all to his damage in a sum according to proof.

97.   Plaintiff has incurred and continues to incur legal expenses and attorneys' fees. Pursuant to Government Code section 12965(b), plaintiff is entitled to recover reasonable attorneys' fees and costs (including expert costs) in an amount according to proof.

98.   Defendants' misconduct was committed intentionally, in a malicious, fraudulent, despicable, oppressive manner, entitling plaintiff to punitive damages against defendants.

## FIFTH CAUSE OF ACTION

**Failure to Prevent Harassment, Discrimination and Retaliation**

**in Violation of Cal. Gov. Code §12940(k)**

**[Against Defendant The Men's' Wearhouse, Tailored Brands**

**Shared, and Does 5 to 20, Inclusive]**

99.   The allegations set forth in paragraphs 1 through 98 are re-alleged and incorporated herein by reference.

100.   At all times herein mentioned, Government Code §12940 (k), was in full force and effect and binding on Defendants and/or DOES 1-100.  This statute required these defendants to take all reasonable steps necessary to prevent discrimination, harassment and retaliation from occurring.

101.   During Plaintiff's employment with Defendants and/or DOES 1-100, Plaintiff engaged in the protected activity of opposing, protesting and/or complaining of harassment, discrimination and/or retaliation due to his sexual orientation but the Defendants and/or DOES 1-100, through their supervisors, personnel and agents, failed to take all reasonable steps to prevent further discrimination, harassment and/or retaliation from occurring.

102.   As a proximate result of Defendants' failure to prevent harassment, discrimination and retaliation, Plaintiff has sustained and continues to sustain substantial losses in earnings and other employment benefits.

**THIRD AMENDED COMPLAINT FOR DAMAGES**

103.     As a proximate result of Defendants' failure to prevent harassment, discrimination and retaliation, Plaintiff has suffered and continues to suffer general damages in a sum according to proof.

104.     As a proximate result of Defendants' failure to prevent harassment, discrimination and retaliation, Plaintiff has incurred, and will continue to incur, attorney's fees and costs.

105.     Defendants have committed the acts herein alleged maliciously, fraudulently and oppressively, with the wrongful intention of injuring Plaintiff, with an improper and intentional motive amounting to malice and in conscious disregard of Plaintiff 's rights. Accordingly, Plaintiff requests the assessment of punitive damages against Defendants, in an amount appropriate to punish and make an example of them.

## SIXTH CAUSE OF ACTION

### Retaliation in Violation of Cal. Gov. Code §§ 12940(h) and 12945(l)

### [Against Defendant The Men's' Wearhouse,

### Tailored Brands Shared, and Does 5 to 100, Inclusive]

106.     The allegations set forth in paragraphs 1 through 105 are re-alleged and incorporated herein by reference.

107.     At all times herein mentioned, FEHA and Government Code §§ 12940 (h) and 12945.2(l), were in full force and effect and binding on Defendants.  These statutes require Defendants to refrain from retaliating against any employee for asserting their rights under the FEHA.  Plaintiff engaged in the protected activities of complaining about unlawful harassment, discrimination, and retaliation.

108.     Defendants retaliated against Plaintiff, in part, by subjecting him to adverse employment conditions including unjust suspension, forcing him to transfer, and by constructively terminating his employment.

109.     As a proximate result of Defendants' willful, knowing and intentional retaliation

23
**THIRD AMENDED COMPLAINT FOR DAMAGES**

against Plaintiff, Plaintiff has lost employment earnings and benefits, past and future, according to proof.

110.    As a proximate result of said retaliation, Plaintiff has suffered emotional distress, physical and mental injuries and general damages, past and future, in a sum according to proof.

111.    As a proximate result of said retaliation, Plaintiff has incurred, and will continue to incur, attorney's fees and costs.

112.    Defendants have committed the acts herein alleged maliciously and oppressively, with the wrongful intention of injuring Plaintiff, with an improper and intentional motive amounting to malice and in conscious disregard of Plaintiff's rights. Accordingly, Plaintiff requests the assessment of punitive damages against Defendants, in an amount appropriate to punish and make an example of them.

## SEVENTH CAUSE OF ACTION

### Wrongful Termination in Violation of Public Policy

### [Against Defendant The Men's Wearhouse,

### Tailored Brands Shared, and Does 5 to 100, Inclusive]

113.    The allegations set forth in paragraphs 1 through 112 are re-alleged and incorporated herein by reference.

114.    Defendants terminated plaintiff's employment in violation of various fundamental public policies underlying both state and federal laws.  Specifically, plaintiff's employment was terminated in part because of his protected status (*i.e.,* his sexual orientation, his age, and/or his good faith complaints).  These actions were in violation of FEHA, the California Constitution and California Labor Code section 1102.5.

115.    As a proximate result of defendants' wrongful constructive termination of plaintiff's employment in violation of fundamental public policies, plaintiff has suffered and continues to suffer humiliation, emotional distress, and mental and physical pain and

anguish, all to her damage in a sum according to proof.

116.     As a result of defendants' wrongful constructive termination of her employment, plaintiff has suffered general and special damages in sums according to proof.

117.     Defendants' wrongful constructive termination of plaintiff's employment was done intentionally, in a malicious, fraudulent, oppressive manner, entitling plaintiff to punitive damages.

118.     Plaintiff has incurred and continues to incur legal expenses and attorneys' fees. Pursuant to Code of Civil Procedure sections 1021.5 and 1032, *et seq.,* Plaintiff is entitled to recover reasonable attorneys' fees and costs in an amount according to proof.

## EIGHTH CAUSE OF ACTION

### Intentional Infliction of Emotional Distress

### [Against All Defendants]

119.     The allegations set forth in paragraphs 1 through 118 are re-alleged and incorporated herein by reference.

120.     Defendants' discriminatory, harassing, and retaliatory actions against Plaintiff constituted severe and outrageous misconduct and caused Plaintiff extreme emotional distress.

121.     Defendants were aware that treating Plaintiff in the manner alleged above, including depriving him of his livelihood, would devastate Plaintiff and cause him extreme hardship.

122.     As a proximate result of Defendants' extreme and outrageous conduct, plaintiff has suffered and continues to suffer severe emotional distress.  Plaintiff has sustained and continues to sustain substantial losses of earnings and other employment benefits as a result of being emotionally distressed.

123.     As a proximate result of Defendants' extreme and outrageous conduct, plaintiff has suffered and continues to suffer humiliation, emotional distress, and mental and

**THIRD AMENDED COMPLAINT FOR DAMAGES**

physical pain and anguish, all to his damage in a sum according to proof.

124.    Defendants' misconduct was committed intentionally, in a malicious, fraudu-lent, oppressive manner, entitling plaintiff to punitive damages.

## NINTH CAUSE OF ACTION

### Whistleblower Retaliation in Violation of Cal. Lab. Code §1102.5
### [Against Defendant The Men's' Wearhouse, Tailored Brands
### Shared, and Does 5 to 100, Inclusive]

125.    The allegations set forth in paragraphs 1 through 124 are re-alleged and incor-porated herein by reference.

126.   At all relevant times, Labor Code section 1102.5 was in effect and was binding on defendants.  This statute prohibits defendants from retaliating against any employee, including plaintiff, for raising complaints of illegality.

127.   Plaintiff raised complaints of illegality while he worked for defendants, and defendants retaliated against him by terminating his employment.

128.    Plaintiff disclosed to Defendants what he reasonably to be illegal activity when he reported Defendant Van Orden's illegal drug use while working for Defendants by objecting to and complaining about it.  Plaintiff disclosed the violations to Defendants' management including the Store Manager. Plaintiff also reported illegal activity when he reported to Defendants that Van Orden was discriminating and harassing him based upon his sexual orientation, and then later reported to Defendants that he believed he was being discriminated against, harassed and retaliated against because of sexual orientation and reports of illegal activity when he was transferred to Defendants' Mission Viejo store. Defendants violated Labor Code § 1102.5 by, *inter alia*:

a.   Making, adopting or enforcing a rule, regulation or policy preventing Plaintiff from disclosing information to a government or law enforcement agency, or to a person with authority over the employee, or to another employee who has authority to investigate,

discover, or correct the violation or noncompliance, where Plaintiff had reasonable cause to believe that the information disclosed a violation of state or federal statute, or a violation or noncompliance with a state or federal regulation;

      b.   Retaliating against Plaintiff for disclosing information to a government or law enforcement agency, or to a person with authority over the employee, or to another employee who has authority to investigate, discover, or correct the violation or noncompliance, where Plaintiff had reasonable cause to believe that the information discloses a violation of state or federal statute, or a violation or noncompliance with a state or federal rule or regulation;

      c.   Retaliating against Plaintiff for refusing to participate in an activity that would result in a violation of state or federal statute, or a violation or noncompliance with a state or federal rule or regulation; and,

      d.   Retaliating against Plaintiff for having exercised his rights under the foregoing paragraphs (a), (b) and (c).

129.   As a direct and proximate cause of Defendants' violation of Labor Code § 1102.5, Plaintiff has suffered damages including but not limited to lost wages and work benefits, in a sum to be determined at trial.

130.   As a proximate result of the wrongful acts of Defendants, Plaintiff has suffered and continues to suffer actual, consequential, and incidental financial losses, including without limitation, loss of salary and benefits, emotional distress, humiliation, mental anguish, anger, and embarrassment, all in an amount subject to proof at the time of trial.

131.   The aforementioned acts of Defendants were willful, wanton, malicious, intentional, oppressive, and despicable, and were done in willful and conscious disregard of the rights of Plaintiff, and were done by managerial agents and employees of Defendants, or with the express knowledge, consent, and ratification of managerial employees of Defendants, and thereby justify the awarding of punitive and exemplary damages in an amount to be determined at the time of trial.

## **TENTH CAUSE OF ACTION**

### **Defamation in Violation of Cal. Civil Code § 46**

### **[Against all Defendants]**

132.   The allegations set forth in paragraphs 1 through 131 are re-alleged and incorporated herein by reference.

133.   Slander is a false and unprivileged publication, orally uttered, and also communications by radio or any mechanical or other means which:

> 1. Charges any person with crime, or with having been indicted, convicted, or punished for crime;
>
> 2. Imputes in him the present existence of an infectious, contagious, or loathsome disease;
>
> 3. Tends directly to injure him in respect to his office, profession, trade or business, either by imputing to him general disqualification in those respects which the office or other occupation peculiarly requires, or by imputing something with reference to his office, profession, trade, or business that has a natural tendency to lessen its profits;
>
> 4. Imputes to him impotence or a want of chastity; or
>
> 5. Which, by natural consequence, causes actual damage.

134.   Here, Defendant Van Orden lodged a sexual harassment complaint against Plaintiff that he knew was patently false and was indicative of his discriminatory animus towards Plaintiff because of his sexual orientation.

135.   Plaintiff was forced to re-publish Van Orden's defamatory remarks and will continue to have to re-publish the defamatory remarks, causing him further embarrassment and further harm to his reputation.

136.   As a result of his knowingly false allegation, Plaintiff Hoffmann was suspended, transferred and ultimately, constructively terminated.

137.   As a proximate result of the wrongful acts of Defendants, Plaintiff has suffered

**THIRD AMENDED COMPLAINT FOR DAMAGES**

and continues to suffer actual, consequential, and incidental financial losses, including without limitation, loss of salary and benefits, emotional distress, humiliation, mental anguish, anger, and embarrassment, all in an amount subject to proof at the time of trial.

138.    The aforementioned acts of Defendants were willful, wanton, malicious, intentional, oppressive, and despicable, and were done in willful and conscious disregard of the rights of Plaintiff, and were done by managerial agents and employees of Defendants, or with the express knowledge, consent, and ratification of managerial employees of Defendants, and thereby justify the awarding of punitive and exemplary damages in an amount to be determined at the time of trial.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff MICHAEL HOFFMANN prays for judgment against Defendants jointly and severally as follows:

1.    For compensatory, consequential and incidental damages (including past and future lost wages, benefits, and other losses) in an amount according to proof;

2.    For general damages, including mental anguish, stress, humiliation, loss of enjoyment of life, loss of confidence, emotional distress, nervousness, tension, and anxiety in an amount according to proof;

3.    For money judgment for mental pain and anguish and emotional distress, in an amount according to proof;

4.    For special and incidental damages in an amount according to proof;

5.    For prejudgment and post-judgment interest on all damages awarded;

6.    For reasonable attorneys' fees provided by statute, including California Government Code Section 12965(b);

7.    For costs of suit incurred herein;

8.    For punitive damages in an amount according to proof; and

9.    For such other relief as the Court may deem just and proper.

**THIRD AMENDED COMPLAINT FOR DAMAGES**

1

2

3

Dated:  July 18, 2019

SOUTHERN CALIFORNIA
LABOR LAW GROUP, PC

4

5

By: _____

6

Taylor M. Prainito, Esq.
Michael Zelman, Esq.

7

Attorneys for Plaintiff,
MICHAEL HOFFMANN

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**THIRD AMENDED COMPLAINT FOR DAMAGES**

**HOFFMANN v. THE MEN'S WEARHOUSE, INC., et al.      CASE NO.: BC 699 909**

**PROOF OF SERVICE**

**STATE OF CALIFORNIA, COUNTY OF LOS ANGELES**

I am an employee in the County of Los Angeles, State of California.  I am over the age of 18 and not a party to the within action; my business address is 1875 Century Park E. Ste. 480, Los Angeles, California 90067.

On July 18, 2019, I served the foregoing document, described as **"PLAINTIFF MICHAEL HOFFMANN'S SECOND AMENDED COMPLAINT FOR DAMAGES"** on all interested parties in this action by placing a true copy thereof in a sealed envelope, addressed as follows:

Cory D. Catignani                      Brent M. Giddens
Andrew C. Smith                        Daphne Bishop
VORYS, SATER, SEYMOUR AND              CAROTHERS DISANTS &
PEASE LLP                              FREUDENBERGER LLP
52 East Gay Street                     707 Wilshire Boulevard, Suite 5150
Columbus, Ohio 43215                   Los Angeles, CA 90017

☒    **(BY MAIL)** As follows:

☒    I placed such envelope, with postage thereon prepaid, in the United States mail at Los Angeles, California.

☒    I am "readily familiar" with the firm's practice of collecting and processing correspondence for mailing.  Under that practice, it would be deposited with the U.S. Postal Service on that same day, with postage thereon fully prepaid, at Los Angeles, California, in the ordinary course of business.  I am aware that, on motion of the party served, service is presumed invalid if the postal cancellation or postage meter date is more than one day after the date of deposit for mailing in this affidavit.

☐    **(BY ELECTRONIC MAIL)**  I sent such document via electronic mail to the number(s) noted above.

☐    **(OVERNIGHT MAIL)**  I placed a true and correct copy of the document(s) in a sealed envelope addressed as follows and I caused the envelope to be deposited with FedEx at Los Angeles, California.

☒    **(STATE)**  I declare, under penalty of perjury under the laws of the State of California, that the above is true and correct.

Executed on July 18, 2019, at Los Angeles, California.

_____
Chelsea Dean

**PROOF OF SERVICE**