## IN THE UNITED STATES BANKRUPTCY COURT
## SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

|  |  |  |
|---|---|---|
| | ) | |
| In re: | ) | Chapter 11 |
| | ) | |
| TAILORED BRANDS, INC., *et al.*,[1] | ) | Case No. 20-33900 (MI) |
| | ) | |
| Reorganized Debtors. | ) | (Jointly Administered) |
| | ) | |
| | ) | Re: Docket Nos. 1676 and 1694 |
| | ) | |

## RESPONSE OF THE LIQUIDATING TRUST TO
## THE SETTLEMENT OBJECTION FILED AT DOCKET NO. 1694

The Liquidating Trust and Liquidating Trustee (together, the "Trust Parties") hereby submit this Response (this "Response") to the Settlement Objection filed at Document No. 1694 (the "Objection") by Zeo Short Duration Income Fund, Zeo Sustainable Credit Fund, Yosef U. Magid, Zachery Annis, Hickory Knoll Landscaping, Inc., and Aviary Associates, L.P. (collectively, the "Zeo Group").[2]  In support of this Response, the Trust Parties state as follows:

### Preliminary Statement

1. In very difficult circumstances, where the value of the Trust Assets had fallen dramatically and risked losing all value absent additional financing, the Trustee undertook to make the best of the situation.  Following careful review of documentation provided by the Reorganized Debtors and their financial advisors, including actual financial performance compared to

---

[1]   A complete list of each of the Debtors in these chapter 11 cases may be obtained on the website of the Debtors' claims and noticing agent at http://cases.primeclerk.com/TailoredBrands.  The location of the Debtors' service address in these chapter 11 cases is: 6100 Stevenson Boulevard, Fremont, California 94538.

[2]   Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the *Debtors' Fifth Amended Joint Plan of Reorganization Pursuant to Chapter 11 of the Bankruptcy Code* [Docket No. 1216] (the "Plan"), the Plan Supplement (as defined in the Plan), the Liquidating Trust Agreement (as defined in the Plan), or the *Motion of the Liquidating Trustee to Enter Into, and Perform Under, Settlement Agreement* [Docket No. 1676] (the "Settlement Motion") as applicable.

projections, and detailed analysis of issues and options, the Trustee used the tools available to him to maximize the value of the Trust. Indeed, the Trustee used the Reorganized Debtors' delay in providing notice of Board meetings as leverage to extract a substantial premium. The Trustee exercised his best judgment in managing the affairs of the Trust and seeking to safeguard the interests of all of the Trust Beneficiaries, all in accordance with the Liquidating Trust Agreement (the "LTA"). Additionally, in the interest of transparency and in order to permit any Beneficiaries to raise objections, the Trustee exercised his discretion pursuant to section 3.5 of the LTA to seek bankruptcy court approval of the Settlement.

2. As discussed below, the Zeo Group is the only party objecting to the Settlement. It now has had the benefit of informal discovery, including document production, an extended interview of the Trustee, and communications with and production of documents by the Reorganized Debtors. The Zeo Group advises that it is not offering any expert financial analysis. It has not challenged the underlying facts regarding the Reorganized Debtors' financial performance. It objects to the Settlement, not based on objective facts, but on the basis that it would prefer to see the Trustee take his chances in litigation.

3. The Trustee considered litigation and other alternatives before entering into the Settlement Agreement, and again after reviewing the Zeo Group objection. The Trustee views litigation as highly speculative, potentially taking years and eliminating any recovery for Beneficiaries. Exercising his judgment in accordance with the LTA, and after consideration of the facts and the options, the Trustee believes the Settlement Agreement is superior to what the Zeo Group has referred to as a "lottery ticket." Indeed, under the terms of the LTA, bambling was not an option for the Trustee. The Trustee seeks approval of the Settlement Agreement as the better outcome for the Trust.

**Procedural Posture**

4.      On March 5, 2021, the Trust Parties filed the Settlement Motion requesting an Order approving the Settlement, including the releases granted therein.

5.      The Settlement Motion first came before the Court for hearing on March 15, 2021. The Court directed parties seeking informal discovery of the Trustee to contact the Trustee and the Court continued the hearing on the Motion to April 1, 2021.  Only the Zeo Group requested discovery.[3]

6.      The Zeo Group requested and received copies of documents received by the Trustee from the Reorganized Debtors during the relevant time period, including copies of certain Board minutes and informational materials and analyses gathered or created by the Reorganized Debtors and their financial advisors. The Trustee also delivered copies of the Silver Point Financing documents and a 34-page analysis prepared by M3 Partners, the Trustee's financial advisor.   On March 24, 2021, the Zeo Group conducted an interview of the Trustee, lasting approximately 75 minutes.   After the interview, the Zeo Group requested and received certain additional documents.

**Response to Objections**

7.      The LTA sets forth the respective rights and obligations of the Trustee and the Beneficiaries.

8.      The LTA gives the Trustee broad authority to sell and liquidate Trust Assets (§ 2.2(iii)) and perform any and all acts necessary or desirable to accomplish the purposes of the

---

[3] Four parties responded to the Settlement Motion:  (a) the Zeo Group filed its Objection; (b) the Franchisees (as defined in their objection at Docket No. 1693) filed a limited objection seeking clarification of the rights of creditors selecting the cash out option under the Plan; (c) Voya Investment Management Co. LLC and its affiliates ("Voya") filed a reservation of rights at Docket No. 1695; and (d) the Reorganized Debtors filed a statement in support of the Settlement Motion at Docket No. 1698.   The Trustee understands that the Franchisees' objection was resolved following the Reorganized Debtors' clarification of rights of creditors electing the cash out option. Voya's reservation of rights related only to any claims against the Reorganized Debtors.   Consequently, the only remaining objection is that of the Zeo Group.

Trust (§ 3.1), including collecting, administering, and liquidating Trust Assets for the benefit of the Beneficiaries (§ 2.2(i)). Importantly, the "determination by the Trustee as to what actions are in the best interests of the Trust shall be determinative." LTA, § 3.4.3. The LTA also gives the Trustee authority to settle claims and administer the Trust Assets without obtaining prior court approval, while allowing the Trustee to seek such approval when the Trustee has determined it is in the best interest of the Trust to do so. *See* LTA, § 3.5.

9.      At the same time, the LTA limits the rights of Beneficiaries and protects the Trustee. The LTA strictly limits the Zeo Group's standing.[4] Beneficiaries may not direct the Trustee to take or not take any action, and cannot institute any actions against the Trust Assets. *See* LTA, §§ 5.2 and 5.6. Further, except in situations involving the Trustee's resignation and his periodic reporting obligations expressly required under the LTA, the Zeo Group has no right to an accounting of the Trust Assets. *See* LTA, § 5.5.[5]

**A.  The Trustee Exercised Sound Judgment.**

10.     The Zeo Group's contention that the Settlement Agreement is not a reasonable exercise of the Trustee's business judgment is contrary to the terms of the LTA and the record before the Court.

11.     Preliminarily, the Zeo Group's principal complaint is that the Reorganized Debtors' business failed to meet earlier projections. While that certainly caused the value of the Trust Assets to decline and necessitated the need for new financing, it is not a basis to object to the Settlement.

---

[4] Zeo Short Duration Income Fund and Zeo Sustainable Credit Fund, as holders of a beneficial interest in notes, have only securities entitlements. They are not Beneficiaries of the Trust. The actual Beneficiary is the indenture trustee, which has not objected to the Settlement.

[5] The LTA also expressly limits the liability of the Trustee for his work on behalf of the Trust. *See* LTA, § 6.2.

12.     The Settlement Motion, as supported by the analysis of the Trustee's financial advisors, addresses the reason for the decline in value of the equity and reviews trading prices. These are objective facts on the basis of which the Trustee negotiated a sale of the equity at a substantial premium.  Any question as to the terms of the Financing and the need for a cash infusion has been addressed by production of Board materials, the transaction documents for the Financing, and the analysis of the Trustee's financial advisors.

13.     Questions relating to the projected outcome of the Settlement Agreement for Beneficiaries, while important for the Trust and Beneficiaries, are not relevant to the issue of whether the Trustee exercised sound judgment.  As noted above, the Trustee is unhappy to be in this situation, but he has exercised his judgment to negotiate a settlement that provides a substantial premium to the value of the equity.

14.     The Zeo Group understands that the Trustee incurred expenses in connection with the matters set forth in the Motion.  Of course, such expenses would increase materially were the Trustee to pursue litigation.   The Zeo Group cannot object to the Settlement on the basis that the Trustee incurred expenses and, at the same time, argue the Trustee should pursue expensive litigation.

15.     The Reorganized Debtors' post-emergence performance and liquidity crisis required the Trustee to take on significant work, on an emergency basis.  Although the costs associated with this work obviously were not within the budget contemplated by the Debtors (or the yet-to-be-identified Trustee) when the Plan was confirmed, the urgency of the situation required the Trustee to react immediately.   In furtherance of his commitment to the Trust, and aware that the situation was urgent, the Trustee immediately directed his financial advisors and counsel to assist with the hope of achieving a substantial recovery from which he might pay the

associated fees and expenses. With their assistance, in gathering documents, performing an in-depth investigation and analysis, and undertaking negotiations that led to drafting the Settlement Agreement, he did so. They further assisted in drafting pleadings, attending Court hearings, and responding to discovery requests. The Reorganized Debtors acknowledged this and, in the course of negotiations, increased the aggregate offer from $3,000,000 to $3,300,000 for the purpose of contributing to payment of the Trustee's fees and expenses. The Trustee is hopeful that, in recognition of the foregoing, the Trustee may pay fees and expenses as necessary transaction costs incurred in furtherance of this urgent work and in order to obtain the substantial premium for the Trust.[6]

16.     The attached Schedule 1 shows expenses incurred by the Trustee. Subtracting the total expenses incurred by the Trust prior to February 15, 2021, leaves a net balance of $271,561. During the period prior to February 15, 2021, the Trustee achieved significant reductions in the claims pool, from an initial $4.5 billion to approximately $1.3 billion. Fees and expenses relating to the Trustee's diligence, negotiating and drafting of the Settlement Agreement, and related proceedings may aggregate $450,000 to $500,000.

17.     Rather than accept the substantial premium to value of the equity following the Company's poor performance, the Zeo Group wants to hold onto a diluted equity interest and preserve potential claims. The Zeo Group referred to this as the lottery ticket approach. It is a

---

[6] As a separate matter, the definition of Trust Assets in the Plan is limited to the Liquidating Trustee Fee Amount and the Liquidating Trust and Warrants. It did not include claims that did not exist at the time. This definition could have been expanded to include any other rights or claims the Trust might have in the future, but it did not. If the LTA and Plan are to be construed strictly, that extends to the definition of Trust Assets. To the extent the Trustee is receiving consideration for the release granted in the Settlement Agreement, the consideration is not a "Trust Asset" as defined in the LTA and it is not subject to the $1,000,000 cap. Nothing in the Plan precludes use of proceeds from resolution of post-bankruptcy claims involving non-Trust Assets to cover costs of getting this additional recovery.

preference to gamble with Trust property. Under the LTA, it is the Trustee who has authority to make that decision and he has done so.

**B. The Trustee Considered Alternatives to the Settlement.**

18.     The Reorganized Debtors admit failing to provide the Trustee with notice of Board meetings and copies of Board materials. The Trustee is satisfied that it was not intentional. Once the Trustee learned of this failure, he considered all possible responses.

19.     The Trustee could have done nothing -- retaining diluted equity in a troubled business. The Trustee could have forgone selling the Trust's equity and pursued litigation in which a recovery was highly uncertain and the damages were speculative. Indeed, when pressed on this point, the Zeo Group did not identify any damages resulting from the failure to provide notice.

20.     Even if the Trustee (a) were to assume the failure to provide notice of the relevant Board meetings was intentional, or (b) would have received timely notice of the Board meetings, the outcome would not have changed.

   a. Earlier notice would not have altered the Reorganized Debtor's failure to meet projections and the continued economic fallout from the pandemic. It would not have altered the Reorganized Debtors' need for cash.

   b. The Trustee used the Reorganized Debtor's failure as negotiating leverage to obtain a substantial premium for the equity. But for the lack of timely notice, the Trustee would not have had this tool to obtain such a premium.

   c. Third, the Trustee's rights with respect to the Board meetings were limited to observation. He had no voting rights and no ability to alter the decisions of the Board with or without notice of the meeting.

21.     The Trustee inquired into whether Mr. Burian was disinterested.  Importantly, even if he were not disinterested, the Trustee reasonably relied on discussions with the Reorganized Debtors' independent advisors and their written analysis.  *See* LTA, § 3.6(a) (The Trustee may rely, and shall be protected in acting, upon any statement, instrument, opinion, report, notice, or other document reasonably believed by him to be genuine).

22.     The Zeo Group offered no better alternative to the Settlement.  Its idea of investing in the new financing is not a viable option.  Even if the Trustee had funds to invest, the LTA expressly prohibits the Trustee from using Trust Assets in any trade or business or reinvesting any Trust Assets.  *See* LTA, § 3.4.  Indeed, the institutional investors in the Zeo Group declined the Trustee's offer to sell them the equity for an amount more than $3.3 million, demonstrating that they lack confidence in their own strategy.

23.     The Trustee reasonably determined that the potential recovery from such litigation was speculative, time-consuming, and expensive.  Accordingly, even if the Trust had the funding to pursue the litigation, doing so would not be in the best interests of the Trust and its Beneficiaries.

24.     In short, the Trustee determined that entering into the Settlement and obtaining a substantial premium for the stock was wiser than gambling with the Trust's limited assets.  Delay would have eliminated the opportunity to enter into the Settlement Agreement.  The Trustee carefully analyzed the information provided to it by the Debtor's financial advisors, the value of the consideration being provided under the Settlement, and the potential value of and obstacles to pursuing the claims being released under the Settlement Agreement.  Under the facts and circumstances, entry into the Settlement Agreement represented the best option for maximizing the Trust Assets for the benefit of the Beneficiaries and provides good and valuable consideration

for the release of the Trust's claims contained therein.  The Trustee has carefully considered the objections of the Zeo Group and nothing in the objections has altered the Trustee's judgment.

### C.  The Liquidating Trust Agreement Provides The Applicable Standard Of Review For Approving the Settlement.

25.    The Zeo Group's argument for evaluation of the Settlement Agreement under an "entire fairness" standard is inconsistent with the LTA and applicable law.  The Trustee is not the Reorganized Debtors' Board and he is not a party to the Silver Point Financing.

26.    The cases cited by the Zeo Group in support of its argument for imposing a different standard are wholly inapposite.  *In re Los Angeles Dodgers LLC*, 457 B.R. 208 (Bankr. D. Del. 2011), considered a challenge to a debtor's request to approve DIP financing.  In this case, the Trustee is not a chapter 11 debtor and the Settlement Motion does not seek approval of a debtor's conduct; it involves the Trustee's independent review of the Reorganized Debtors' performance and contractually authorized efforts to maximize recovery for the Trust.  In *Weinberger v. U.O.P., Inc.*, 457 A.2d 701 (Del 1983), the court considered directors' duties in approving a transaction with a related entity.  In this case, however, the Trustee is not the Reorganized Debtors and he did not enter into the financing transaction with Silver Point.  Any suggestion that *Dodgers* and *Weinberger* alter the Trustee's rights or obligations as set forth in the Liquidating Trust Agreement is misplaced.

27.    The Plan and LTA explain that the Trustee is ***not*** a common law fiduciary.  To the contrary, the LT is a liquidating trust under 26 CFR § 301.7701-4(d). [7] *See* LTA, § 10.5.   The rights and obligations are defined by contract, and any laws (statutory or common) pertaining to

---

[7] 26 CFR § 301.7701-4(d) makes clear that such a trust is characterized as a "trust" solely for tax purposes.

trusts that are inconsistent with the contract are expressly inapplicable.  *Id.*  In this regard, the Trustee's role is analogous to that of an indenture trustee under a trust indenture.

> Unlike the ordinary trustee, who has historic common-law duties imposed beyond those in the trust agreement, an indenture trustee is more like a stakeholder whose duties and obligations are exclusively defined by the terms of the indenture agreement.

*Meckel v. Cont'l Res. Co.*, 758 F.2d 811, 815-816 (2d Cir. 1985)  As explained in *Elliott Associates v. J. Henry Schroder Bank & Trust Co.*, 838 F.2d 66, 70-72 (2d Cir. 1988), the Court should refuse to imply duties not set forth in the express language of the LTA.[8]  *See also Thompson v. Goetzmann*, 337 F.3d 489, 499 (5th Cir. 2003) (invoking the "well-known interpretative canon, expressio unius est exclusio alterius—'the expression of one thing implies the exclusion of another'").

28.     While the Trust is not a debtor subject to the standards of FED. R. BANKR. P. 9019, the Settlement Agreement by analogy satisfies the requirements of that rule.  *See e.g. In re W.T. Grant Co.*, 699 F.2d 599, 608 (2d Cir. 1983); *In re Teltronics Serv., Inc.*, 762 F.2d 185, 2 189 (2d Cir. 1985) (the Court must canvas the issues and determine whether the settlement "falls below the lowest point in the range of reasonableness."); *see also Connecticut Gen. Life Ins. Co. v. United Cos. Fin. Corp. (In re Foster Mortgage Corp.)*, 68 F.3d 914 (5th Cir. 1995) (in considering settlements under Rule 9019, courts consider (a) the probability of success in the litigation, with due consideration for the uncertainty in fact and law, (b) the complexity and likely duration of the litigation and any attendant expense, inconvenience and delay, and (c) all other factors bearing on

---

[8] *See also e.g., AG Capital Funding Partners, L.P. v. State Street Bank & Trust Co.*, 11 N.Y. 3d 146, 156 (2008) ("The trustee under a corporate indenture … has his rights and duties defined, not by the fiduciary relationship, but exclusively by the terms of the agreement.") (citations omitted); *see also Lorenz v. CSX Corp.*, 736 F. Supp. 650, 656 (W.D. Pa. 1990) ("Unlike the typical trustee whose rights and duties are grounded in the common law, the obligations of the Indenture Trustee are circumscribed by the terms of the Indenture.  His duties are defined by contract, and he owes the debenture holders no fiduciary duties beyond those provided by the Indenture."), *aff'd* 1 F.3d 1406 (3d Cir. 1993).

the wisdom of the compromise.)  While the desires of the creditors are not binding, a court "should carefully consider the wishes of the majority of the creditors." *Id.* at 917 (internal citations omitted).

29.     In this case, thousands of Beneficiaries received notice of the Settlement. (*See Affidavit of Service or Notice to Beneficiaries of the Liquidating GUC Trust of Tailored Brands, Inc. Regarding Emergency Bankruptcy Court Hearing*, Docket No. 1672-6, found starting on page 524 of the *Witness And Exhibit List Of Mohsin Meghji, As Trustee Of The Liquidating Trust, In Connection With The Hearing On March 15, 2021 filed* at Docket No. 1702).  Additionally, as a courtesy to the members of the former Official Committee of Unsecured Creditors, the Trustee held a conference call on March 1, 2021, to review circumstances leading up to the Settlement, the reasons for his judgment, and to address any questions.  They raised no objections and thanked the Trustee for his courtesy.  Of the thousands who received the notice of the Settlement, the only objection to the Settlement is the Zeo Group.

30.     It is significant that the Zeo Group is alone in objecting to the Settlement. *Cf In re Foster Mortgage Corp., supra* at 918 ("[A] bankruptcy court should consider the amount of creditor support for a compromise settlement as a 'factor bearing on the wisdom of the compromise,' as a way to show deference to the reasonable views of the creditors.").  And it is notable that the Zeo Group has not offered to cover any costs of pursuing litigation.  Cf *In re Foster Mortgage Corp* (objecting creditors offered to cover the litigation costs); *see also* LTA, § 5.7 (the Court may require any party challenging any action taken or omitted by as the Trust or the Trustee to provide an undertaking to pay the costs of such suit, including reasonable attorneys' fees).

31.     Because the Trustee's rights and obligations are set forth in the LTA, as referenced above, and the LTA provides that the Trustee's determination of the best interest of the Trust is

determinative, the decision to enter into the Settlement is a matter of limited review. The real issue before the Court is whether the Trustee made an honest decision, upon consideration of the relevant facts and available alternatives. The Trustee has met this burden.

**D. There is No Plan Modification**

32.     Nothing in the Settlement Motion seeks to modify the Plan. The Reorganized Debtors' shortfall on performance projections does not alter the Plan, not does it not alter the Trust or the Trust Assets or the rights and powers of the Trustee under the LTA. The Trustee's actions to (a) discover the failure to provide notices, (b) analyze the consequences of such failure, (c) analyze the Reorganized Debtor's need for financing, and (d) determine the best course of action under the circumstances, all come within the purview of the LTA as written.

33.     The Zeo Group has not provided credible evidence contradicting the Reorganized Debtors' need for the immediate cash infusion to avoid defaulting under its existing credit facilities or demonstrating the availability for funding on terms better than the Financing provided by Silver Point.

34.     In the absence of such evidence, the Zeo Group's lottery ticket strategy is deeply flawed. It advocates that the Trust retain significantly diluted equity interests in the Reorganized Debtors in the hope that the pandemic ends soon and their business meets earlier (flawed) projections. The Trustee determined that, under these circumstances, retaining equity and pursuing litigation was not likely to maximize the value of the Trust Assets and was not in the best interests of the Trust and its Beneficiaries. As provided for in section 3.4.3 of the LTA, the exercise of the Trustee's judgment is determinative.

**Conclusion**

35.    In light of the substantially higher recovery by Beneficiaries under the Settlement Agreement (as compared to the scenario where the Settlement Agreement is not approved), and the highly speculative, uncertain, and potentially costly nature of litigation that the Trustee would reserve the right to pursue if the Settlement Agreement were not approved, the Trust Parties respectfully request that the Court enter the Order, approving the Trust Parties' entry into the Settlement Agreement as a reasonable exercise of the Trustee's business judgment.

WHEREFORE, the Trust Parties respectfully request entry of the Court over rule the objections to the Settlement Motion and enter the Order, substantially in the form attached to the Settlement Motion, granting the relief requested therein and granting such other and further relief as is appropriate under the circumstances.

Houston, Texas
March 31, 2021

Respectfully submitted,

**NORTON ROSE FULBRIGHT US LLP**

By:   ___/s/ Jason L. Boland_____
William R. Greendyke (SBT 08390450)
Jason L. Boland (SBT 24040542)
Julie Goodrich Harrison (SBT 24092434)
1301 McKinney Street, Suite 5100
Houston, Texas 77010
Telephone: (713) 651-5151
Email: william.greendyke@nortonrosefulbright.com
jason.boland@nortonrosefulbright.com
julie.harrison@nortonrosefulbright.com

*Counsel for the Trustee*

-and-

**STONECIPHER LAW FIRM**
Eric A. Schaffer (*admitted pro hac vice*)
125 First Ave.
Pittsburgh, PA 15222-1590
Telephone: (412) 391-8510
Email: eschaffer@stonecipherlaw.com

*Special Counsel for the Trustee*

## Certificate of Service

I certify that on March 31, 2021, I caused a copy of the foregoing document to be served by the Electronic Case Filing System for the United States Bankruptcy Court for the Southern District of Texas.

/s/ Julie Harrison

# **SCHEDULE 1**

Trust Fees & Expenses Through March 30, 2021

**Tailored Brands Liquidating GUC Trust**
**Summary of Fees Paid through March 30, 2021**

|  | $ |
|---|---:|
| Original Cash Balance in Bank | $1,000,000 |
| Less Payments: | |
|   PSZJ Dec & Jan Invoices | (265,851) |
|   M3 Dec Invoice | (164,297) |
|   Bank Fees | (30) |
|   D&O Insurance | (140,000) |
|   Stonecipher Feb Invoice | (87,108) |
| **Current Cash in Bank Account as of March 30** | **$342,715** |
| | |
| **Outstanding Invoices Through March 30** | |
| Less: | |
|   NRF December Invoice | ($15,571) |
|   NRF Jan Invoice | (9,594) |
|   NRF Feb Invoice | (13,816) |
|   Prime Clerk Outstanding Invoices | (21,575) |
|   M3 Jan Invoice | (55,854) |
|   M3 Feb Invoice | (252,333) |
| **Cash Balance After Payment of Invoices Through March 30** | **($26,028)** |
| | |
| **Estimated Invoices Incurred In March** | |
| Less: | |
|   NRF March Estimate Through 4/1 | ($58,144) |
|   M3 March Estimate Through 4/1 | (99,296) |
|   Stonecipher March Estimate Through 4/1 | (107,560) |
| **Total Cash Shortfall After Payment of All Invoices and Estimates Through March** | **($291,028)** |
| | |
| **Other Estimated Fees** | |
| Less: | |
|   NRF Estimated Fees to Distribute Cash and Wrap Up | ($25,000) |
|   M3 Estimated Fees to Distribute Cash and Wrap Up | (25,000) |
|   Tax Preparation Estimate | (15,000) |
|   Prime Clerk Future Invoices | (28,425) |
|   NRF Estimated Fees to Complete Claim Reconciliation Process, Distribute Cash and Wrap Up | (50,000) |
|   M3 Estimated Fees to Complete Claim Reconciliation Process, Distribute Cash and Wrap Up | (25,000) |
| **Total Cash Shortfall** | **($459,453)** |