

ENTERED
05/20/2021

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| TAILORED BRANDS, INC., *et al* | § | CASE NO: 20-33900 |
| | § | |
| JA APPAREL CORP. | § | CASE NO: 20-33901 |
| | § | |
| K&G MENS COMPANY INC. | § | CASE NO: 20-33902 |
| | § | |
| JOS. A. BANK CLOTHIERS, INC. | § | CASE NO: 20-33903 |
| | § | |
| JOSEPH ABBOUD MANUFACTURING CORP. | § | CASE NO: 20-33904 |
| | § | |
| NASHAWENA MILLS CORP. | § | CASE NO: 20-33905 |
| | § | |
| MOORES RETAIL GROUP CORP. | § | CASE NO: 20-33906 |
| | § | |
| TAILORED BRANDS WORLDWIDE PURCHASING CO. | § | CASE NO: 20-33907 |
| | § | |
| MWDC HOLDING INC. | § | CASE NO: 20-33908 |
| | § | |
| RENWICK TECHNOLOGIES, INC. | § | CASE NO: 20-33909 |
| | § | |
| MOORES THE SUIT PEOPLE CORP. | § | CASE NO: 20-33910 |
| | § | |
| THE MENS WEARHOUSE, INC. | § | CASE NO: 20-33911 |
| | § | |
| TAILORED BRANDS PURCHASING LLC | § | CASE NO: 20-33912 |
| | § | |
| TAILORED SHARED SERVICES, LLC | § | CASE NO: 20-33913 |
| | § | |
| TAILORED BRANDS GIFT CARD CO LLC | § | CASE NO: 20-33914 |
| | § | |
| THE JOSEPH A. BANK MFG. CO., INC. | § | CASE NO: 20-33915 |
| | § | |
| TMW MERCHANTS LLC | § | CASE NO: 20-33916 |
| | § | |
| TB UK HOLDING LIMITED, | § | CASE NO: 20-33917 |
| | § | **Jointly Administered** |
| Debtors. | § | |
| | § | **CHAPTER 11** |

## **MEMORANDUM OPINION**

Michael Hoffman, a plaintiff alleging employment discrimination claims against Tailored Brands, Inc., seeks relief from the discharge injunction to pursue his claims in California state court. Mr. Hoffman's request for relief implicates the third-party-liability exception to the injunction 11 U.S.C. § 524(a)(2) imposes on pre-petition litigation against debtors.

Allowing Mr. Hoffman to proceed against Tailored Brands will force Tailored Brands to bear self-insured retention risk under its employment insurance policy. Section 524(a)(2) prohibits this result. Mr. Hoffman's request for relief is denied. This Opinion does not determine whether Mr. Hoffman may proceed against third parties.

## **BACKGROUND**

Before Tailored Brands, Inc. filed bankruptcy, Michael Hoffman sued The Men's Wearhouse, Inc., Tailored Brands Shared Services, LLC, and a Men's Wearhouse employee in California state court.[1] Mr. Hoffman alleged that he was the victim of employment discrimination and workplace harassment perpetrated by Tailored Brands' employees. (ECF No. 955-1 at 4, 7–18). When Tailored Brands filed bankruptcy, the automatic stay paused Mr. Hoffman's suit. The discharge injunction now prevents Mr. Hoffman from prosecuting his claims. Mr. Hoffman seeks relief from this injunction.

Mr. Hoffman initiated his suit in 2018, more than two years before Tailored Brands sought chapter 11 relief. (ECF No. 955-1 at 57). The harassment and discrimination alleged in Mr. Hoffman's suit occurred between 2015 and 2017. (ECF No. 955-1 at 7–18). At the time Tailored Brands filed bankruptcy in 2020, it had already expended $321,000 defending against Mr. Hoffman's lawsuit. (ECF No. 1285 at 9).

---

[1] Tailored Brands' affiliate debtors include both The Men's Wearhouse and Tailored Brands Shared Services (collectively, "Tailored Brands"). (ECF No. 41 at 1–4).

When Tailored Brands filed for chapter 11 protection, the automatic stay halted Mr. Hoffman's litigation. 11 U.S.C. § 362(a)(1) (2020). Two months later, Mr. Hoffman moved for relief from the automatic stay, arguing that cause existed to lift the stay with respect to his state court claims. (*See* ECF No. 955). Notably, Mr. Hoffman did not file a proof of claim prior to seeking relief from the stay. (ECF No. 1461 at 4 n.1). Tailored Brands opposed Mr. Hoffman's request on two ground. First, Tailored Brands argued that the burden lifting the stay would impose on Tailored Brands foreclosed a grant of relief from the stay for cause. (ECF No. 1285 at 6–16). Second, pointing to the impending effective date of its plan, Tailored Brands asserted that granting Mr. Hoffman relief from the stay would frustrate the effect of Tailored Brands' confirmed plan. (ECF No. 1285 at 11, 15). Tailored Brands also noted that its employment insurance policy required Tailored Brands to exhaust a $500,000 self-insured retention before its insurer would cover defense costs or monetary judgments. (ECF No. 1285 at 8–9).[2]

The confirmation of Tailored Brands' plan enjoined Mr. Hoffman from continuing to pursue his claim. (ECF No. 1221 at 33, 37). Mr. Hoffman then restyled his request for relief as a "Motion for Relief from the Discharge Injunction." (*See* ECF No. 1461 at 6). In his re-styled motion, Mr. Hoffman argued that relief was permissible because he only sought to establish Tailored Brands' "nominal liability." (ECF No. 1461 at 1–6). Opposing Mr. Hoffman's request, Tailored Brands emphasized that the self-insured retention it held under its employment insurance policy was unexhausted. (ECF No. 1535 at 9–12). Because its self-insured retention was

---

[2] Liberty Insurance Underwriters Inc. holds Tailored Brands' employment insurance policy. (*See* ECF No. 1535-1).

unexhausted, Tailored Brands maintained that it would be forced to bear defense costs if Mr. Hoffman continued prosecuting his claims. (ECF No. 1535 at 11–12).[3]

Tailored Brands' employment insurance policy provides:

> The Insurer shall be liable for only that part of Loss arising from a Claim *which is excess of the Retention amount* only set forth in Item IV. of the Declarations or Item V., if applicable. The Retention shall be uninsured and shall be paid only by an Insured, regardless of the number of claimants, Claims made, or Insureds against whom a Claim is made.

(ECF No. 1535-1 at 10 (emphasis added)). The "Retention amount" under Tailored Brands' policy is $500,000, "inclusive of Defense Costs." (ECF No. 1535-1 at 2). Tailored Brands' policy also provides that, "[i]n the event [Tailored Brands] is unable to indemnify or advance costs on behalf of an [employee] due to its financial insolvency, no Retention will apply." (ECF No. 1535-1 at 6, 10).

After confirmation of Tailored Brands' plan, Mr. Hoffman moved for leave to file a late proof of claim. (*See* ECF No. 1373). Tailored Brands and Mr. Hoffman resolved this motion informally. (*See* ECF No. 1501). The parties agreed that Mr. Hoffman would be allowed a $250,000 general unsecured claim. (ECF No. 1585 at 4).[4] Tailored Brands relied on this allowance in opposing Mr. Hoffman's request for a discharge injunction modification. (ECF No. 1535 at 12–13). Specifically, Tailored Brands argued that allowing Mr. Hoffman to both proceed in state court and hold an allowed unsecured claim could result in a double recovery. (ECF No. 1535 at 12–13).

---

[3] Tailored Brands assumed its employment insurance policy on the effective date of its plan. (ECF No. 1221 at 70–71, 121–22).

[4] Specifically, Mr. Hoffman's claim would be treated as a Class 5(b) General Unsecured Claim by Tailored Brands' plan. (ECF No. 1585 at 4; *see also* ECF No. 1221 at 104).

Following briefing and oral argument, the Court took Mr. Hoffman's request for modification of the discharge injunction under advisement. This Memorandum Opinion disposes of Mr. Hoffman's request.

## JURISDICTION

The Court has jurisdiction over this proceeding pursuant to 28 U.S.C. § 1334. The effect of a debtor's discharge is a core matter under 28 U.S.C. § 157(b)(2)(A), (I). This case was referred to the bankruptcy court pursuant to 28 U.S.C. § 157(a). Venue is proper under 28 U.S.C. §§ 1408 and 1409.

## DISCUSSION

Mr. Hoffman seeks modification of Tailored Brands' discharge. Tailored Brands' discharge enjoined Mr. Hoffman from pursuing his state court suit against Tailored Brands. 11 U.S.C. § 524(a)(2). While § 524(a)(2) bars Mr. Hoffman from seeking redress from Tailored Brands directly, § 524(e) allows the assertion of claims against non-debtors that may also be liable for Mr. Hoffman's alleged claims. § 524(e). Under § 524(e), plaintiffs—like Mr. Hoffman—are permitted to pursue actions against discharged debtors solely to establish the debtor's nominal liability so as to recover directly from the debtor's insurer. *See, e.g., In re Edgeworth*, 993 F.2d 51, 53 (5th Cir. 1993) ("Section 524(e) specifies that the debt still exists and can be collected from any other entity that might be liable.").[5] Tailored Brands argues that Mr. Hoffman is not entitled to § 524(e)'s relief because the continuation of his action will necessarily affect Tailored Brands' reorganization.

Mr. Hoffman's continued prosecution of his claims will require Tailored Brands to incur defense costs, and possibly responsibility for an adverse monetary judgment. Though Tailored

---

[5] Tailored Brands refers to this discharge injunction modification as the "insurer exception." (ECF No. 1535 at 6).

Brands' financial exposure would be relatively small compared to the size of its estate, it is indisputable that the remaining $179,000 of exposure is a material amount. Tailored Brands will, indisputably, bear this exposure itself. This burden's existence forecloses Mr. Hoffman's ability to rely on the "insurer exception" to § 524(a)(2)'s injunction.

  **A.** **Section 524(a) Insulates Tailored Brands from Mr. Hoffman's Claims**

Section 524(a) effectuates the Bankruptcy Code's "fresh-start" policy. *Edgeworth*, 993 F.2d at 54 (quoting *In re Jet Fla. Sys., Inc.*, 883 F.2d 970, 972 (11th Cir. 1989)). Yet the "fresh start" afforded to debtors does not absolve debtors' pre-petition insurers of their obligations under the debtors' insurance policies. *See id.* ("[I]t makes no sense to allow an insurer to escape coverage for injuries caused by its insured merely because the insured receives a bankruptcy discharge."). To prevent windfall absolution, tort claimants have been allowed to pursue their pre-petition claims against discharged debtors. *Id.*; *In re Walker*, 927 F.2d 1138, 1142 (10th Cir. 1991); *see also Green v. Welsh*, 956 F.2d 30, 33 (2d Cir. 1992) ("Numerous courts, confronted with a tort claimant who seeks to proceed against a discharged debtor only for the purpose of recovering against an insurer, have relied on §§ 524(a) and 524(e) and the fresh start policy in concluding that the discharge injunction does not bar such a suit.").

In proceeding against a discharged debtor, a claimant may not recover damages from the debtor directly, nor force the debtor to incur "substantial" defense costs. *In re CJ Holding Co.*, 16-33590, 2018 WL 3965225, at *2 (Bankr. S.D. Tex. Aug. 15, 2018) (citing *Edgeworth*, 993 F.2d at 54) ("[T]his exception to § 524 is not available if the debtor is required to incur substantial costs in the litigation."). Instead, the claimant may proceed solely to establish the debtor's liability and, as a result, recover insurance proceeds. *Id.* (citing *Edgeworth*, 993 F.2d at 54–55). This "insurer

exception" balances the debtor's "fresh start" with § 524(e)'s exclusion of jointly or derivatively liable non-debtors from the discharge injunction.

Mr. Hoffman contends that his state court action falls within the insurer exception. Tailored Brands disagrees. Tailored Brands' policy required it to exhaust a $500,000 self-insured retention before its insurer was obligated to pay Tailored Brands' defense costs or cover monetary damages. As of the petition date, Tailored Brands had expended roughly $321,000 defending against Mr. Hoffman's claims—leaving about $179,000 of Tailored Brands' self-insured retention unexhausted. Allowing Mr. Hoffman to proceed in state court would require Tailored Brands to exhaust at least some of the remaining self-insured retention.

An application of the insurer exception must be predicated on the debtor's complete insulation from any "interference with [its] fresh start in economic life." *Walker*, 927 F.2d at 1142; *see also Edgeworth*, 993 F.2d at 54 ("[A]s long as the costs of defense are borne by the insurer and there is no execution on judgment against the debtor personally, section 524(a) will not bar a suit . . . ."). Despite this requirement, a *possibility* that the discharged debtor will bear litigation costs is not enough to preclude the continued prosecution of a pre-petition suit. *See, e.g., Jet Fla.*, 883 F.3d at 976 (allowing a tort claimant to continue prosecuting his pre-petition action against a discharged debtor even though the court could not determine if the debtor would bear defense costs); *Walker*, 927 F.2d at 1144 ("[W]e are not prepared to deny the [claimants] the relief they seek on the ground that [the debtor] may thereby incur some legal expense."). Here, however, Tailored Brands will, indisputably, bear additional costs if Mr. Hoffman proceeds.

Mr. Hoffman maintains that he may proceed anyway, arguing that the costs Tailored Brands will be forced to bear (up to $179,000) are "negligible." *See Walker*, 927 F.2d at 1143. In other words, Mr. Hoffman argues that, given the size of Tailored Brands' estate, an expenditure of

$179,000 will not interfere with Tailored Brands' "fresh start in economic life." *Id.* at 1142 (quoting *Jet Fla.*, 883 F.2d at 975). To reach this conclusion, Mr. Hoffman urges an "evaluation of the equities." (ECF No. 1461 at 4).

To illustrate his position, Mr. Hoffman asked the Court to consider whether a self-insured retention of $100 would interfere with a debtor's fresh start. In such a case, the plaintiff could simply pay the $100 in cash (or, if the amount to be incurred was uncertain, place the $100 in escrow), thereby eliminating any risk of financial prejudice to the debtor's fresh start. However, requiring Mr. Hoffman to pay $179,000 in cash to proceed is not a realistic alternative. Mr. Hoffman's "law school" hypothetical fails to change the result in this case.

Section 524(e) does not contemplate an "evaluation of the equities." Central to an application of the "insurer exception" is evidence that there is no more than a *remote possibility* that the debtor will be forced to incur additional defense costs or pay damages resulting from a judgment. *See, e.g., Edgeworth*, 993 F.2d at 54 ("[The debtor] has not asserted that he will be required to pay the costs of his defense against appellants' suit or that the insurance company denied coverage . . . . Such threats to Edgeworth's pocketbook might require a different result under § 524."); *Jet Fla.*, 883 F.2d at 976 ("[T]he relationship between the parties in this action—Plaintiff, bankrupt, and insurer—virtually requires that [the debtor] will be represented in the defamation action with no cost to it. . . . [T]he possibility that the debtor will be responsible to pay any amount associated with defending this action is so remote that the fresh-start policy is simply not defeated."); *DePippo v. Kmart Corp.*, 335 B.R. 290, 298 (S.D.N.Y. 2005) (precluding a claimant from continuing her pre-petition litigation against the debtor because the debtor would be required to bear defense costs, as well as a portion of any damages awarded).[6] The indisputable

---

[6] Mr. Hoffman primarily relies on the Tenth Circuit's *Walker*, 927 F.2d 1138, opinion to support his argument that forcing Tailored Brands to expend the remainder of its self-insured retention will not frustrate its "fresh start." In

evidence that Tailored Brands will bear at least defense costs contravenes the central requirement of the insurer exception. *See Edgeworth*, 993 F.2d at 54. Because this requirement is not met, Mr. Hoffman cannot proceed on his state court claims.

The practical effect of Tailored Brands' self-insured retention reinforces the conclusion that Mr. Hoffman is foreclosed from pursuing his claims in state court. Under its employment insurance policy, Tailored Brands was required to exhaust its self-insured retention before the policy's coverage took effect. This requirement effectively left Tailored Brands uninsured with respect to the first $500,000 it incurred in relation to Mr. Hoffman's action. *CJ Holding*, 2018 WL 3965225, at *2 (noting "that there was effectively no primary insurance as the Debtor had a large self-insured retention.").[7] Section 524(a)'s discharge injunction precludes Mr. Hoffman from forcing Tailored Brands to incur uninsured defense costs or liability. *See In re Chemtura Corp.*, 09-11233 (JLG), 2016 WL 11651714, at *16 (Bankr. S.D.N.Y. Nov. 23, 2016) ("[W]here the reorganized debtor will incur liability on account of discharged debts if litigation goes forward

---

*Walker*, the Tenth Circuit noted that, in certain instances, pre-petition plaintiffs may be allowed to continue their litigation against a discharged debtor even though the debtor will incur defense costs. 927 F.2d at 1143–44 (citing *Air Fla.*, 883 F.2d at 976). In doing so, the *Walker* court relied on cases in which "the [post-petition] cost of defending [a lawsuit]" was not found to be "great prejudice" barring relief from the *automatic stay*. *Id.* at 1143 (quoting *In re Harris*, 85 B.R. 858, 860 (Bankr. D. Colo. 1988)).

The *Walker* opinion does not undermine the central tenet of the insurer exception—that the debtor's "fresh start" be unaffected. First, like the Eleventh Circuit in *Air Florida*, the *Walker* court was unwilling to deny a tort claimant relief based on an unsubstantiated *possibility* that the debtor would incur litigation costs. *Id.* at 1143–44. Second, the *Walker* tort claimants had already established the debtor's liability prepetition, so any additional legal costs the debtor *might* have incurred would have been limited to costs related to the enforcement of the judgment or its re-litigation—not the prosecution of a discharged claim. *Id.* at 1142–44. Finally, while both the automatic stay and the discharge injunction advance the Code's "fresh start" policy, the finality of the discharge injunction's effect demands more rigorous protection. *See In re Anderson*, 884 F.3d 382, 390–91 (2d Cir. 2018) ("Unlike the automatic stay, the discharge injunction is likely to be central to bankruptcy long after the close of proceedings. . . . the discharge injunction . . . is absolutely integral to the fresh start assured by [a debtor's] bankruptcy proceeding."). That is, while the stay merely pauses the prosecution of claims against the debtor, the discharge injunction assures the debtor that it is forever absolved of liability on those claims.

[7] In Mr. Hoffman's $100 hypothetical, a plaintiff's advance of funds to cover a debtor's unexhausted self-insured retention essentially functions as co-insurance, covering costs left uninsured by operation of the self-insured retention.

even if only to fix the insurer's liability under the policy, courts enforce section 524(a) and bar prosecution of those actions.").

Though he is precluded from establishing Tailored Brands' liability in state court, Mr. Hoffman is not without redress. Tailored Brands agreed to the allowance of a $250,000 general unsecured claim on account of Mr. Hoffman's employment discrimination allegations. This resolution effectively provides Mr. Hoffman the same relief afforded to other litigants with unliquidated or contingent claims against Tailored Brands—a judicial liquidation of his claim. *See In re Mirant Corp.*, 316 B.R. 234, 239–40 (Bankr. N.D. Tex. 2004) (explaining that a bankruptcy court's ability to liquidate "claims against a bankruptcy estate . . . is at the very heart of the bankruptcy court's function and purpose.").

The Bankruptcy Code assures Tailored Brands finality. Effectuating this promise of finality requires Mr. Hoffman to accept the redress the Code offers similarly situated creditors.

### B. Mr. Hoffman's Rights Against Third Parties are Undetermined

In his state court lawsuit, Mr. Hoffman identified a Tailored Brands' employee as a defendant, alleging this employee harassed Mr. Hoffman during Mr. Hoffman's tenure with Tailored Brands. It is possible that the self-insured retention provision may not apply to Tailored Brands' duty, if any, to indemnify this employee. The Court expresses no view on whether the discharge injunction bars the continuation Mr. Hoffman's suit against the employee.

## CONCLUSION

The discharge injunction bars the continued prosecution of Mr. Hoffman's claims against Tailored Brands. Mr. Hoffman's Motion for Relief is Denied. A separate Order will be issued.

SIGNED 05/20/2021

                                        Marvin Isgur
                              United States Bankruptcy Judge